**Walter SMACHLO, as a Trustee of Consultants Retirement Trust suing derivatively as a stockholder in the right and for the benefit of The El Paso Company, Plaintiff,**

**v.**

**Ralph J. BIRKELO, Howard Boyd, Michael W. Curry, Robert N. Harbor, William V. Holik, Jr., John R. Hubbard, Ben F. Love, David F. Mackie, Jack D. McCarthy, John B. Megahon, Richard S. Morris, E.G. Najaiko, W.D. Noel, Travis H. Petty, Willard R. Rockwell, Jr., Billy B. Ross, Kenneth Rush, Eli Wackstein, R–H Holdings Corporation, Burlington Northern Inc., and The El Paso Company, Defendants.**

Civ. A. No. 83–233–JLL.

United States District Court,
D. Delaware.

Dec. 27, 1983.

---

Steven D. Goldberg and Michael Goodrick of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., Edward Nathan, New York City, of counsel, for plaintiff.

A. Gilchrist Sparks, III, and Lawrence Hamermesh of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Marc P. Cherno, Stephen D. Alexander and Stuart A. Blander of Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel, for

defendants Burlington Northern, Inc. and R–H Holdings Corp.

Robert K. Payson of Potter, Anderson & Corroon, Wilmington, Del., Mudge, Rose, Guthrie, Alexander & Ferdon, Wachtell, Lipton, Rosen & Katz, New York, N.Y., of counsel, for defendants The El Paso Co. and individual defendants.

## OPINION

LATCHUM, Senior District Judge.

It was approximately one year ago that Burlington Northern, Inc. ("Burlington"), a Delaware corporation with its principal place of business in Seattle, Washington, made a successful tender offer for 21 million shares of the El Paso Company ("El Paso"), a Delaware corporation with its principal place of business in Houston, Texas. One result of this tender offer has been a flood of litigation in the Delaware state and federal courts challenging the propriety of the activity involved in that tender offer. In the Delaware Chancery Court, a number of lawsuits contending violations of state corporate law in connection with the Burlington offer have been filed.[1] Three cases have been filed in this Court. The first, *Schreiber v. Burlington Northern, Inc.*, Civil Action No. 83–13, was dismissed by this Court for failure to state a claim under Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e). *Brill v. Burlington Northern, Inc.*, Civil Action No. 83–345, is the second case filed and has been stayed by agreement of the parties.[2]

This is the third case before the Court and it is a shareholder derivative suit brought on behalf of El Paso by Walter Smachlo, a New York citizen, as trustee for Consultants Retirement Trust ("CRT"). Named as defendants in addition to El Paso and Burlington are R–H Holdings Corporation ("R–H"), a Delaware corporation and wholly-owned subsidiary of Burlington, and the directors and officers of El Paso.[3] Jur-

---

1. Currently pending in the Delaware Chancery Court are *Hander v. Petty*, No. 7057 (filed Jan. 3, 1983), and *Gelobter v. Petty*, No. 7087 (filed Jan. 31, 1983).

2. The parties agreed to a stay of this action pending the outcome of the appeal of the

*Schreiber* case to the Court of Appeals for the Third Circuit.

3. Specifically, the directors and officers of El Paso who have been named as defendants in this suit are: Travis H. Petty, Chairman of the Board and President; Howard Boyd, Director;

isdiction is premised upon diversity for alleged breaches of corporate fiduciary and waste of corporate assets, and on exclusive federal jurisdiction for claims alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities and Exchange Commission, 17 CFR § 240.10b–5, promulgated thereunder. The defendants now move to dismiss the complaint or alternatively to stay this action.

FACTS

For purposes of deciding the defendants' motion, the Court must accept the allegations of the complaint as true. The complaint alleges that on or about December 20, 1982, Burlington, through R–H, publicly announced a tender offer for 25.1 million shares of El Paso stock at $24 per share. In response, El Paso retained Merrill Lynch White Weld Capital Markets Group ("Merrill Lynch") to act as its financial adviser in regard to the tender offer.

On December 23, 1982, the El Paso board of directors met, determined that the Burlington offer was inadequate and not in the best interest of El Paso or its stockholders, and sent a notice to the El Paso stockholders recommending that they not tender their shares to Burlington. The Board gave the following reasons for its recommendation: Merrill Lynch determined that the $24 price was inadequate, El Paso had traded at a higher price in substantial volume during the past year, and the proration pool comprising 50.7% of the outstanding El Paso stock was too small. The El Paso board also believed that Burlington had no definite plans to acquire the remaining shares and might have difficulty financing such a subsequent purchase if it decided to do so.

Thereafter, El Paso entered into "golden parachute" contracts with some of its key employees apparently in an effort to deter Burlington's tender offer. On December 24, 1982, El Paso entered into contracts with Richard S. Morris and Michael B. Bracy providing for continued employment at their current salary with a guarantee of benefits even if their employment were terminated due to a change of control. El Paso entered into similar agreements for three years with David F. Mackie and Billy B. Ross.

On January 10, 1983, El Paso, Burlington and R–H entered into an agreement whereby R–H terminated the original offer and made a new tender offer for El Paso shares. R–H agreed to purchase approximately 4.1 million shares from El Paso and El Paso gave R–H an option to purchase an additional 4.95 million authorized but unissued El Paso shares at $24 per share. Thereafter, El Paso sent another notice to its shareholders stating that after seeking and exploring alternatives to the first Burlington offer, it would no longer oppose a tender offer by Burlington. On February 8, 1983, El Paso sold 4.1 million shares to R–H at $24 per share. After the filing of this suit, a special meeting of the El Paso stockholders was held on December 15, 1983, at which a merger between El Paso and Burlington was approved by stockholders other than Burlington, its subsidiaries and affiliates, and the merger became effective on that day.

The complaint alleges that this activity constituted a waste of corporate assets and a breach of fiduciary duty by the directors and officers of El Paso on three grounds. First, the plaintiff contends that it was a waste of corporate assets and breach of fiduciary duty for El Paso to retain Merrill Lynch, thereby incurring a substantial fee for its services, and then refuse to follow their advice. The plaintiff also asserts that the "golden parachutes" given to select El Paso employees constitutes a waste of corporate assets and breach of fiduciary duty.

William V. Holik, Jr., Director; John R. Hubbard, Director; Ben F. Love, Director; Richard S. Morris, Director; W.D. Noel, Director; Willard F. Rockwell, Jr., Director; Kenneth Rush, Senior Vice President and Treasurer; Michael W. Curry, Senior Vice President and General Counsel; David F. Mackie, Senior Vice President; E.G. Najaiko, Senior Vice President; Ralph J. Birkelo, Vice President; Robert N. Harbor, Vice President; Jack D. McCarthy, Vice President; John B. Megahon, Vice President; Billy B. Ross, Vice President and Controller; and Eli Wackstein, Vice President.

Finally, plaintiff alleges that it was a breach of fiduciary duty for El Paso to enter into the agreement with Burlington and R–H.

The complaint also contains allegations that all the defendants:

conspired to defraud El Paso by falsely representing that, (1) the offer of $24 per share was fair and adequate consideration; (2) the issuance and sale to R–H of 4,166,667 shares of El Paso's stock at $24 a share and the giving of an option to purchase 4,950,000 at $24 per share was in the best interest of El Paso; (3) the original advice of its consultant, Merrill Lynch, was erroneous and should not be followed; (4) El Paso's prior recommendation to stockholders to reject the old R–H offer was erroneous and should be retracted; (5) it was in the best interest of El Paso to enter into the Agreement because of an alleged strengthening of El Paso's financial position.

(Docket Item ["D.I."] 1 at 14.)

DISCUSSION

Presently before the Court is defendants' motion to dismiss or alternatively to stay this action. The defendants base their motion on the following grounds: plaintiff did not verify the complaint and make a proper demand upon the El Paso directors as required by Fed.R.Civ.P. 23.1; the complaint fails to allege fraud with the particularity required by Fed.R.Civ.P. 9(b); and the complaint fails to state a cause of action under Section 10(b) and Rule 10b–5 because Burlington could not misrepresent to El Paso the value of El Paso's own stock, the alleged misrepresentations are of opinion and not fact and the purchaser-seller rule has not been met. (D.I. 26 at 7–30).[4] Alternatively, defendants have moved to stay or dismiss the state-law claims in light of the prior actions asserting similar claims pending in the Delaware Chancery Court.

Federal Rule of Civil Procedure 23.1 requires a plaintiff in a shareholder deriva-tive suit to make a proper demand upon the company's board of directors before filing suit and to verify the complaint. In this case the complaint was not verified and plaintiff admitted that he never saw the complaint until one week before his deposition. (D.I. 24 at 29.) Defendants therefore seek dismissal of the complaint.

Plaintiff explained at his deposition that he had been following the Burlington offer and that his broker advised him that the offer price was too low. (D.I. 24 at 26–28.) As a result, according to plaintiff, he requested his attorney, Edward Nathan, to investigate and following this investigation, Mr. Nathan advised him to file suit. Plaintiff stated that although he did not see the actual complaint, he did have a draft copy of it and Nathan reviewed it with him over the telephone before its filing. (*Id.* at 69–70.) After the defendants' motion to dismiss was filed, plaintiff filed an affidavit in which he verified the complaint. (D.I. 30 at 2–3.)

■ The verification of the complaint in a shareholder derivative action may appear at first blush to be a purely technical requirement, but it serves the important purpose of ensuring "that the plaintiff or some other person has investigated the charges and found them to have substance," *Porte v. Home Federal Savings & Loan Association,* 409 F.Supp. 752, 754 (N.D.Ill.1976), and thereby prevent the filing of strike suits. This purpose, however, must be tempered by the recognition that the verification requirement is "not to be a general impediment to shareholder derivative actions." *Lewis v. Curtis,* 671 F.2d 779, 787 (3d Cir.1982) (quoting *Markowitz v. Brody,* 90 F.R.D. 542, 549–50 n. 2 (S.D.N.Y.1981)); *see Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966).

Thus, in order to strike a proper balance between these two considerations, the

---

**4.** Originally, defendants contended that the state law claims should be dismissed because one of CRT's trustees apparently was MTC Corp., a Delaware corporation. In his answering brief to defendants' motion to dismiss, plaintiff explained that MTC is not a trustee (D.I. 28 at 14–15), and at oral argument on the motion to dismiss, defendants stated that they would not be pursuing this ground for dismissal of the action. (D.I. 41 at 31.)

courts have generally granted plaintiff leave to replead the complaint and properly verify it. In *Deaktor v. Fox Grocery Corp.*, 332 F.Supp. 536 (W.D.Pa.1971), the District Court went further, permitting the plaintiff to forego the verification requirement when it was apparent from plaintiff's deposition that he was sufficiently cognizant as to the allegations in the complaint. *Id.* at 541. The Court, in *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570 (S.D. N.Y.1972), remedied the plaintiff's failure to verify the complaint by requiring the plaintiff to file an affidavit verifying the complaint when it was apparent that the failure to verify was a mere oversight. *Id.* at 577–78.

Although the courts have taken a pragmatic approach to the verification requirement, this in no way suggests that the requirement should be taken lightly. It is only in those cases where the plaintiff has figuratively but not literally met the letter of the law that the courts should use this practical approach.

In the present case, if the only issue before the Court were plaintiff's technical failure to verify as discussed above, then the Court would have before it a situation similar to the *Weisfeld* case. Defendants contend, however, that plaintiff has also failed to meet Rule 23.1's requirement that before filing a shareholder derivative suit the plaintiff must make a proper demand on the company's board of directors. Thus, before the Court decides whether to grant plaintiff leave to replead or to excuse him for failing to verify, the Court must consider whether the demand requirement has been satisfied.

 The demand requirement is clearly not a technical procedural requirement. *See Shlensky v. Dorsey*, 574 F.2d 131, 142 (3d Cir.1978); *Cramer v. General Telephone and Electronics Corp.*, 582 F.2d 259, 275 (3d Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). Rather, it serves the very important purpose of ensuring that before a shareholder derivative suit is brought, the company's board of directors has considered all possible intracorporate reme-

dies. *See Heit v. Baird*, 567 F.2d 1157 (1st Cir.1977). In effect, it is analogous to the exhaustion of administrative remedies requirement in administrative law cases in that it requires the plaintiff to pursue all available avenues of extrajudicial remedies before filing suit. Thus, the Third Circuit has noted the importance of the demand requirement:

> "Once the shareholder has made a demand upon the directors, the directors are then able to determine whether in their opinion a suit on behalf of the corporation would comport with the best interests of the corporation." *Cramer v. GTE Corp.*, 582 F.2d 259, 275 (1979). The directors can pursue remedies alternative to litigation, can terminate meritless causes of actions, and can determine whether litigation cost and other adverse effects on business relationships with potential defendants would outweigh any potential recovery from the lawsuit.

*Weiss v. Temporary Investment Fund*, 692 F.2d 928, 945 (3d Cir.1982). Therefore, the corporate management must be given the first opportunity to institute the litigation since, "[a]s a general principle, the responsibility for determining whether or not a corporation shall enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors." *Landy v. Federal Deposit Insurance Company*, 486 F.2d 139, 146 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *see In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

 The demand itself must be more than pro forma; the plaintiff must make a serious request upon the board and specify the nature of the activity in question. In this respect, the Supreme Court has stated:

> before the shareholder is permitted in his own name, to initiate and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted

all the means within his reach to obtain within the corporation itself, the redress of his grievances, or action in conformity to his wishes. *He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part,* and this must be made apparent to the Court.

*Hawes v. Oakland,* 104 U.S. 450, 460–61, 26 L.Ed. 827 (1882) (emphasis added).

In the present case, plaintiff made a demand upon the board by letter dated February 1, 1983. (D.I. 1, Ex. A.) The letter was signed by Nathan but it did not mention the identity of the El Paso shareholder he represented. Instead, the letter stated that Mr. Nathan "represent[s] the owners of approximately 2,000 shares of El Paso stock who have not tendered their stock in connection with the tender offer of Burlington Northern." *Id.* The letter requested the board to file suit and further stated that "[i]f such action has not been instituted within two weeks from the date of this letter, I will assume that my demand has been refused and will proceed accordingly." *Id.*

On March 4, 1983, William A. Wise, Vice President and Assistant General Counsel of El Paso sent a responding letter to Mr. Nathan which stated:

I am in receipt of your letter dated February 1, 1983 demanding that the El Paso Company take certain actions against its directors and officers and against Burlington Northern, Inc. This is to advise you that The El Paso Company will not consider utilizing its corporate machinery in the ways requested by you without documentation that its shareholders are requesting such actions. Furthermore, the time constraints listed in your letter would be unreasonable even if the corporation considered pursuing the actions requested by you.

(D.I. 1, Ex. B.) Nathan did not respond and instead filed this lawsuit for the plaintiff.

■ Based upon these facts, the Court finds that plaintiff has failed to satisfy the demand requirement because Nathan's letter is defective in two respects. First, the letter fails to sufficiently identify Mr. Nathan's client. A company's board of directors should not be required to act upon the demand of an alleged shareholder when that shareholder fails to properly identify himself. If this Court were to hold otherwise, then unscrupulous plaintiffs could circumvent the demand requirement by framing their demands in vague, ambiguous terms. The plaintiff must exercise good faith in making his demand. *See Doctor v. Harrington,* 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905). A demand, such as the one in the present case, fails to satisfy this requirement. The board is required to act reasonably in considering a shareholder's demand. However, the board is not charged with being clairvoyant; it cannot be expected to act where the shareholder does not specify who he is.

Here, when the corporation requested more information from Nathan, he responded by filing suit instead of providing the requested information which he had a duty to do. *See Lucking v. Delano,* 129 F.2d 283, 286 (6th Cir.1942). By taking this course of action, plaintiff has hindered the demand requirement's important purpose "of allowing corporations to govern themselves to the extent possible, avoiding unnecessary judicial involvement in the internal affairs of business organizations, and discouraging harassing strike suits ...." 7A Wright & Miller, Federal Practice and Procedure: Civil § 1831, at 382 (1972).

In the case of *Shlensky v. Dorsey,* 574 F.2d 131 (3d Cir.1978), the plaintiff attempted to satisfy the demand requirement by sending four letters to the company's board of directors, two of which requested the board to seek damages from an unnamed third party. 574 F.2d at 140–41. The district court dismissed the suit with prejudice for failure to satisfy the demand requirement and the Third Circuit affirmed, stating that the failure to identify the third party was "completely lacking in the specificity which would give the directors a fair opportunity to initiate the action, which the shareholders subsequently undertook, which it is the purpose of the

demand requirement of the rule to provide." *Id.* at 141 (citing *Halprin v. Babbitt,* 303 F.2d 138, 141 (1st Cir.1962)).

Similarly, the El Paso board of directors lacked sufficient information from the demand made by Nathan to take any action. Although Nathan did identify the purported defendants in his demand, the identity of the shareholder requesting board action is equally important information for the board and the Court cannot expect a board of directors to act upon a shareholder's request without such information.

Moreover, it was unreasonable for Nathan to demand that the board file suit within two weeks of the date of the letter when the identity of the shareholder demanding the request is undisclosed. This is not to say that a two-week response deadline to a shareholder request is or is not unreasonable as a matter of law. Rather, the Court finds that the demand as effectuated in this case served only to preclude, rather than guarantee, the effectiveness of the demand requirement, "for the shareholder must allow the corporation an adequate and reasonable amount of time in order to respond to the demand for relief." *Mills v. Esmark, Inc.,* 91 F.R.D. 70, 73 (N.D.Ill.1981) (citing *Siegel v. Merrick,* 84 F.R.D. 106 (S.D.N.Y.1979)). For this reason, the Court will dismiss the plaintiff's complaint with prejudice.

The Court strongly emphasizes that unlike the verification requirement, the failure to make a proper demand cannot be easily remedied by the Court granting the plaintiff leave to restart the process. In *Weiss v. Temporary Investment Fund,* 692 F.2d 928 (3d Cir.1982), a case that originated in this District, *see Weiss v. Temporary Investment Fund,* 516 F.Supp. 665 (D.Del.1981), the District Court dismissed plaintiff's shareholder derivative suit for failure to satisfy the demand requirement, 516 F.Supp. at 668–73, and denied his motion for leave to replead after

making a demand, *Weiss v. Temporary Investment Fund, Inc.,* 520 F.Supp. 1098 (D.Del.1981). On appeal, the Court of Appeals for the Third Circuit affirmed the District Court's denial of leave to replead and stated "[t]he law of this Circuit makes clear that demand after a complaint has been filed is impermissible since it would 'reduce the demand requirement of the rule to a meaningless formality.'" 692 F.2d at 943 (quoting *Shlensky v. Dorsey,* 574 F.2d 131, 142 (3d Cir.1978)).

Thus, although in the instant case the plaintiff made a demand upon the board, it was wholly insufficient and calculated to circumvent the demand requirement by not identifying the shareholder, giving the board a relatively short time period for the board to act and then refusing to assist the board with its request for clarification and filing suit instead. This Circuit has a strong policy of adhering to the demand requirement and an illusory attempt to satisfy the demand requirement, which was followed in this case, will not be tolerated. Thus, this case will be dismissed for failure to comply with the demand requirement of Rule 23.1. The Court, therefore, need not consider defendants' other grounds for dismissal.[5]

An order will be entered in accordance with this Opinion.

---

**5.** Defendants after argument have also supplementally moved to dismiss this action on the ground that plaintiff lacks standing to sue as an El Paso shareholder because El Paso has been merged into Burlington and Burlington therefore controls all shares and rights of El Paso.

See *Heit v. Tenneco, Inc.,* 319 F.Supp. 884 (D.Del.1970). Because the Court has dismissed the suit for plaintiff's failure to comply with Rule 23.1, this supplemental motion also need not be considered.