Edith CITRON, Plaintiff,

v.

ROLLINS ENVIRONMENTAL SERVIC-
ES, INC., Darrell M. Trent, John W.
Rollins, John W. Rollins, Jr., Henry B.
Tippie, Jerry D. Neel, John C. Peet,
William B. Philipbar and Henry Clark,
Defendants and Third-Party Plaintiffs,

v.

Patricia L. NORTON, Individually and as
Secretary of the Louisiana Department
of Environmental Quality, Third-Party
Defendant.

James FISHER, Plaintiff,

v.

ROLLINS ENVIRONMENTAL SERVIC-
ES, INC., Darrell M. Trent, John W.
Rollins, John W. Rollins, Jr., Henry B.
Tippie, John C. Peet, William B. Philip-
bar and Henry Clark, Defendants and
Third-Party Plaintiffs,

v.

Patricia L. NORTON, Individually and as
Secretary of the Louisiana Department
of Environmental Quality, Third-Party
Defendant.

Civ. A. Nos. 85–489LON, 85–501LON.

United States District Court,
D. Delaware.

Sept. 15, 1986.

Joseph A. Rosenthal and Kevin Gross of
Morris & Rosenthal, Wilmington, Del.
(Wolf Popper Ross Wolf & Jones, Good-
kind, Wechsler, Labaton & Rudoff, New
York City, of counsel), for plaintiffs Citron
and Fisher.

Edmund N. Carpenter, II, Jesse A. Fink-
elstein and Gregory V. Varallo of Richards,
Layton & Finger, Wilmington, Del. (Daniel
M. Burt, and Forbes Maner, of Thorp, Reed
& Armstrong, Washington, D.C., of coun-
sel), for defendants, third-party plaintiffs.

Stephen P. Lamb of Skadden, Arps,
Slate, Meagher & Flom, Wilmington, Del.,
(William J. Guste, Jr., Gary Deyser, Peter
Arnow and John W. deGravelles of the

Atty. Gen's Office, Louisiana, of counsel), for third-party defendant.

## OPINION

LONGOBARDI, District Judge.

Stockholders of Rollins Environmental Services, Inc. ("Rollins") have brought these two class action suits[1] against the corporation and its directors alleging claims under section 10(b) of the Securities Exchange Act of 1934. Rollins has filed a third-party complaint pursuant to Federal Rule of Civil Procedure 14(a) against Patricia L. Norton ("Norton"), individually and as Secretary of the Louisiana Department of Environmental Quality, alleging that she is liable to Rollins for contribution or indemnification should Plaintiffs prevail in their suit against the corporation. Before the Court is Norton's motion to dismiss the third-party complaints.

For purposes of deciding a motion to dismiss, the Court accepts the truth of the allegations of the complaint. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985). The gist of Rollins'[2] third-party complaint against Norton is as follows: Defendant Rollins is a Delaware corporation with its principal place of business in Delaware. The corporation is registered under section 12 of the Securities Exchange Act of 1934 and its stock is traded on the New York Stock Exchange ("NYSE"). Wholly-owned subsidiaries of Rollins, including a subsidiary in Baton Rouge, Louisiana, engage in the business of treatment, incineration and disposal of industrial waste. These facilities operate under government permits and are subject to extensive federal and state environmental regulation. The Baton Rouge, Louisiana, facility is regulated by both the U.S. Environmental Protection Agency and the Louisiana Department of Environmental Quality ("LDEQ"). Patricia Norton is Secretary of the LDEQ.

On August 5, 1985, Secretary Norton inspected the Baton Rouge facility. On August 6, 1985, she issued an emergency order temporarily closing the facility and further requiring Rollins to submit within thirty days a plan for permanent closure of the plant. On August 6, 1985 and on the following day, Secretary Norton conferred with brokerage houses outside of Louisiana and with Rollins stockholders concerning the plant closure. The national news media, including The Wall Street Journal, reported on the LDEQ actions. Shortly after these press reports, Rollins stock price fell from $35⅝ per share to $24⅞ per share.

The third-party complaint further avers that Plaintiffs Citron and Fisher, stockholders of Rollins, filed suit against the corporation in this Court on August 16, 1985 on behalf of themselves and all Rollins stockholders who had purchased Rollins stock between December 6, 1983 and August 7, 1985 [the "class period"]. Plaintiffs' complaints, brought pursuant to section 10(b) of the Securities Exchange Act of 1934, allege that Rollins issued annual reports for the years 1983[3] and 1984 which were false and misleading in that they painted a picture of the Rollins plants, including the Baton Rouge facility, as being in full com-

---

**1.** The two cases are *James Fisher v. Rollins Environmental Services, Inc., et al.*, C.A. No. 85–501 LON and *Edith Citron v. Rollins Environmental Services, Inc., et al.*, C.A. No. 85–489 LON. Although the complaints in these cases are not identical, no material differences exist for purposes of the matters presently before the Court. As a result, throughout this opinion, the complaining stockholders, Fisher and Citron, will be referred to collectively as "Plaintiffs." The actions have not been consolidated and the suits have not been certified as class actions. The fact that no class certification has been accomplished at this time has no bearing on the outcome of this motion.

**2.** Also Defendants and Third-Party Plaintiffs in this action are various officers and directors of the corporation: Darrell M. Trent, John W. Rollins, John W. Rollins, Jr., Henry B. Tippie, John C. Peet, William B. Philipbar, Henry Clark and Jerry D. Neel. For purposes of this motion, Defendant corporation and Defendant officers and directors will be referred to collectively as "Rollins."

**3.** Rollins' 1983 annual report issued December 6, 1983. Apparently release of this report by Rollins serves as the triggering event for Plaintiffs' complaints.

pliance with federal and state environmental regulations when, in fact, they were not. Plaintiffs contend that if a true representation of conditions at the Baton Rouge facility had been made, they would not have purchased Rollins stock at the price they did. In other words, Plaintiffs contend that the price of Rollins stock was *inflated* due to the false and misleading statements of technological achievement and exemplary compliance expressed in the Rollins annual reports. Plaintiffs contend that the first true picture of the Rollins compliance history was disclosed on August 6, 1985 by Secretary Norton. They seek damages pursuant to section 10(b) for the difference between (1) the actual value of the shares which they purchased between December 6, 1983 and August 7, 1985,[4] and (2) the inflated price they paid due to the misrepresentations by Rollins.

In this third-party action, Rollins presents a somewhat different scenario. According to Rollins, Secretary Norton is guilty of disseminating to the press and to Rollins shareholders a misrepresentation of Rollins' record of compliance at the Baton Rouge facility. Rollins maintains that publication of these statements caused the value of Rollins stock to plummet on August 7, 1985. Rollins insists that it has operated its facility without significant complaint from federal and state regulatory authorities and argues that Secretary Norton has a vendetta against the company. As evidence of the Secretary's ill will, Rollins indicates that the Secretary did state publicly on August 9, 1985 that she did not want the facility to reopen "even if the company came in tomorrow and said it would turn the [Baton Rouge plant] into a state-of-the-art facility that could be run perfectly in compliance." Docket Item ("D.I.") 27, p. 5, (C.A. No. 85–489); D.I. 18, p. 5 (C.A. No. 85–501).

Although Rollins raises several other allegations against Norton, these are not material to disposition of the motion to dismiss.

## THIRD–PARTY DEFENDANT NORTON'S MOTION TO DISMISS

Rollins insists that it made no false and misleading statements in its 1983 and 1984 annual reports. Rather, Rollins contends that Plaintiffs' complaints stem from the false and misleading statements made by Secretary Norton on August 6, 1985 concerning Rollins history of compliance at the plant. Rollins is suing Norton under section 10(b) contending that Plaintiffs' injuries were caused by an artificial drop in Rollins stock price as a result of Norton's statements—not due to any misrepresentation on the part of Rollins as stated in the third-party complaint:

25. As a result of the dissemination of the materially false and misleading information and failures to disclose material facts, as set forth [in this complaint], the market price of Rollins common stock was temporarily artificially depressed, leading to the filing of this lawsuit by plaintiff Edith Citron and also the filing in the United States District Court of the further case of *James Fisher, plaintiff v. Rollins Environmental Services, Inc., et al.,* defendants, Civil Action No. 85–501, and also the filing in the Delaware Court of Chancery of the case of *Albert Zlotnick, plaintiff v. Darrell M. Trent, et al.,* defendants, Civil Action No. 8134.

26. As a result of the wrongful conduct alleged herein the defendants, third-party plaintiffs, have suffered damages in an amount to be established at trial.

---

**4.** Since the actions are not certified as class actions at this time, the complaints are considered by the Court as being brought personally by Plaintiffs Citron and Fisher. This raises a question, however, concerning the exact dates on which these particular individuals purchased their shares of stock. Although the complaints leave unclear the precise dates on which Plaintiffs personally purchased their shares, it is certain from the complaints that their purchases were made between the dates given in the text as the "class period." Therefore, for purposes of this motion, the Court will use December 6, 1983 through August 7, 1985 inclusive as the dates on which Plaintiffs' purchases were made.

27. By virtue of the foregoing, third-party defendant has violated § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder.

D.I. 27, pp. 10–11 (C.A. No. 85–489); D.I. 18, pp. 10–11 (C.A. No. 85–501).

On this motion to dismiss the third-party complaints, all allegations in the complaints are regarded by the Court as true. *Smachlo v. Birkelo*, 576 F.Supp. 1439, 1441 (D.Del.1983). In this case, therefore, I take as true the allegations that Secretary Norton misrepresented Rollins' compliance history and the quality of the operation at the Baton Rouge facility, that she disseminated these matters to the press, including The Wall Street Journal, and that she did so intentionally. I also accept as true the allegation that the price of Rollins stock fell as a result of Norton's statements to the press and Rollins' shareholders.

1. *Failure of the Complaint to State a Claim Under Section 10(b).*

Section 78j of Title 15 United States Code states in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in

the public interest or for the protection of investors.

15 U.S.C. § 78j.

By the plain language of section 10(b) and Rule 10b–5 promulgated thereunder,[5] a claim arising under these provisions requires that the misrepresentation or omission of material facts be "in connection with the purchase or sale of any security." The "in connection with" language of section 10(b) provides that the plaintiff must demonstrate he has "suffered an injury as a result of deceptive practices 'touching' upon a securities transaction." *Supt. of Insurance v. Bankers Life and Cas. Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–169, 30 L.Ed.2d 128 (1971). In this Circuit, the "touching" requirement is interpreted to mean the existence of a "causal connection between the alleged fraud and the purchase or sale" of a security. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir.1976). The "in connection with" language should be read broadly to effectuate the goals of the provision, which include the protection of investors from fraud.

In the present case, Rollins alleges that Secretary Norton violated section 10(b) by disseminating to the press and to Rollins shareholders on August 6 and 7, 1985, statements which misrepresented the compliance history of Defendant and caused the price of Rollins stock on the NYSE to fall. Rollins argues that these alleged misrepresentations are responsible for the losses incurred by Plaintiffs Citron and Fisher who purchased their shares between December 6, 1983 and August 7, 1985 (the "class period").

A.

■ Rollins' argument that a section 10(b) action can be maintained against Sec-

---

**5.** Rule 10b–5 states in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

\* \* \* \* \* \*

(b) To make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, ...

\* \* \* \* \* \*

in connection with the purchase or sale of any security.

17 C.F.R. § 140.10b–5 (1985).

retary Norton based on purchases or sales of stock *prior* to August 6, 1985 is clearly incorrect. In order to maintain a section 10(b) action, a plaintiff must establish a connection between any factual misrepresentation or omission made and the subsequent purchase or sale of any security. *Liberty Nat. Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 555 (11th Cir.1984); *see Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d at 942–43. In this case, almost the entire extent of the class period took place prior to the time Secretary Norton made her alleged misrepresentations. None of Plaintiff's pre-August 6, 1985 purchases can form the basis of a section 10(b) action against Secretary Norton. *See Gulf Corp. v. Mesa Petroleum Co.*, 582 F.Supp. 1110, 1121 (D.Del.1984) [any misrepresentations made which post-date a plaintiff's purchases of stock are not statements made "in connection with the purchase or sale of any security" for purposes of section 10(b) and Rule 10b–5]; *Guttman v. Brinkmann,* 410 F.Supp. 46 (W.D.Pa.1976) [same].

### B.

Since the Court concludes that no possible section 10(b) action against Secretary Norton based on *pre*-August 6, 1985 events exists, the only remaining question is whether Defendant Rollins has asserted a viable section 10(b) and Rule 10b–5 action against Norton for Plaintiffs' purchases of securities occurring on August 6 and 7, 1985. The Court concludes that no such action exists.

### 2. *Defendant Rollins Lacks Standing to Assert this Section 10(b) Claim*

 Even if the Court were to find that a section 10(b) action against Secretary Norton might exist to remedy the injuries incurred by Plaintiffs, that action does not belong to Defendant Rollins. It is well established that an action under section 10(b) and Rule 10b–5 may only be maintained by an individual who is a purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); 3B Bloomenthal, *Securities and Federal Corporate Law*, § 11.11[1], pp. 11–39 (1985). In its third-party complaint against Norton, Rollins does not allege that the corporation itself purchased or sold securities during the class period; rather, Rollins asserts that it has standing to sue under section 10(b) because a Federal Rule of Civil Procedure 14(a) third-party complainant enjoys "ancillary standing" to assert its third-party claims. In other words, Rollins maintains that its section 10(b) standing to sue is derivative of the Plaintiff's standing as purchasers of Rollins shares in the underlying action.[6] Rollins concedes that this concept of "ancillary standing" is one which has never been "squarely addressed by the courts." D.I. 29, p. 36.

Although Rollins undertakes an expansive analysis of the concept of ancillary jurisdiction in support of its novel claim of "ancillary standing" in this case, the claim is easily rejected. Federal Rule of Civil Procedure 14(a) states in pertinent part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him* for all or part of the plaintiff's claim against him.

Fed.R.Civ.P. 14(a) [emphasis added].

Although a third-party claim is derivative of the primary suit between plaintiff and defendant, all third-party actions are personal as between the defendant (third-party

---

**6.** In its third-party complaint, Rollins asserts that "some Rollins' stockholders sold their Rollins stock" on August 6, 1985 and August 7, 1985. Amended Third-Party Complaints, D.I. 27, p. 7, ¶ 19 (C.A. No. 85–489); D.I. 18, p. 17, ¶ 19 (C.A. No. 85–501). For the record, Rollins does not argue, nor could it properly do so, that these sales should be considered by the Court in passing on the sufficiency of the third-party complaint. Rollins' action is based on Secretary Norton's alleged third-party liability for the harm which has befallen Plaintiffs Citron and Fisher. Neither individual Plaintiff claims to have sold any securities on August 6, 1985 or August 7, 1985.

plaintiff) and third-party defendant. Thus, a third-party action may only be maintained where the defendant alleges that the third-party is or may be liable *to the defendant* for part or all of plaintiff's claim; the fact that a plaintiff may have an action against the third-party defendant is irrelevant to the third-party action. 3 Moore's Federal Practice, ¶ 14.10, p. 14–62. Furthermore, Rule 14 is a procedural device. It creates no substantive rights. It simply provides a procedure for efficiently implementing those substantive rights created by other laws. *Pasco Intern. (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 n. 15 (7th Cir.1980); 3 Moore's Federal Practice, ¶ 14.03[1], p. 14–18.

Third-party practice requires that a defendant assert a personal claim against the third-party defendant. In this case, Rollins has asserted that Norton violated section 10b–5, which requires proof of the purchase or sale of securities. Rollins does not contend that it personally purchased or sold securities during the class period. To allow Rollins to assume "ancillary standing" in this case would have the effect of providing Rollins with substantive rights (an action under the securities laws) which it otherwise would not have.[7] This result clearly goes beyond the scope of procedural Rule 14(a) and must be rejected.

The Court concludes for the reasons stated above that Rollins cannot properly assert a section 10(b) third-party action against Secretary Norton. Norton's motion to dismiss the third-party complaint is granted.

---

**7.** A limited exception exists to the requirement that an individual must allege a personal "injury in fact" in order to maintain standing to sue. The exception is applicable where an injured party's constitutional rights have allegedly been violated and that party is precluded by some obstacle from asserting his or her own rights. *Bowman v. Wilson,* 672 F.2d 1145 (3d Cir.1982). These narrow circumstances are not present in this case and need not be dealt with in detail.