[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Plaintiffs, John Doe, a shareholder of defendant PWI, Inc. (a.k.a. Planning Works, Inc.), on behalf of himself and all other shareholders of the corporation, appeal a January 15, 2002 entry of the Franklin County Court of Common Pleas dismissing their complaint pursuant to Civ.R. 9(B), 12(B)(6), and 23.1 Plaintiffs proffer the following two assignments of error:
 {¶ 2} "[1.] The court of common pleas committed reversible error in granting defendant's motion to dismiss.
 {¶ 3} "[2.] The court of common pleas committed reversible error in holding that appellants' complaint stated only shareholder derivative claims and no individual claims, and further by dismissing claims not referenced in appellees' motion to dismiss and supporting memorandum."
 {¶ 4} An appeal brought from the dismissal of a complaint pursuant to Civ.R. 12(B)(6) presents this court with a question of law which we review de novo. State ex rel. Drake v. Athens Cty. Bd. of Elections (1988), 39 Ohio St.3d 40. Civ.R. 12(B)(6) authorizes a court to dismiss a complaint for failure to state a claim upon which relief may be granted and, thus, tests the legal sufficiency of the complaint. Because it tests the legal, and not factual sufficiency of a complaint, a court must presume all the factual allegations in the complaint to be true and must make all reasonable inferences in favor of the nonmoving party. Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192; Pollock v. Rashid (1996), 117 Ohio App.3d 361; and Cincinnati v. Beretta U.S.A. Corp.,95 Ohio St.3d 416, 2002-Ohio-2480, at ¶ 5. Stated alternatively, a court may grant a motion to dismiss only when it appears beyond doubt that the plaintiff can prove no set of facts warranting the relief sought. O'Brien v. Univ. Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, syllabus; Pollock, supra, at 367-368. If there is a set of facts, consistent with the complaint that would justify the relief prayed for, a trial court may not grant a motion to dismiss for failure to state a claim. York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143,145.
 {¶ 5} In reviewing a dismissal founded upon the insufficiency of a complaint, this court will look at each claim separately. Beretta, supra, at ¶ 6. However, in doing so we will not consider unsupported conclusions that may be included among, but not supported by, the factual allegations of the complaint because such conclusions cannot be deemed admitted and are not sufficient to withstand a motion to dismiss. Grange Mut. Cas. Co. v. Klatt (Mar. 18, 1997), Franklin App. No. 96APE07-888, citing State ex rel. Hickman v. Capots (1989), 45 Ohio St.3d 324. The court will only look to the complaint to determine whether the allegations are legally sufficient to state a claim. Id. Importantly, a plaintiff's pleading must state with specificity under limited circumstances each of the elements of a claim in order to state a claim upon which relief can be granted. York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143; and Byrd v. Faber (1991), 57 Ohio St.3d 56.
 {¶ 6} On March 19, 2001, plaintiffs, a fictitious "John Doe," Michael McKibben, PWI's former CEO, and his wife Nancy, filed a twenty-page complaint, which set forth the following facts and legal claims.
 {¶ 7} In paragraphs one through eleven of their complaint, plaintiffs alleged that PWI, Inc., is a computer software development company incorporated in the state of Ohio, and doing business in Columbus, New Jersey, Moscow, and Russia. PWI, Inc., creates computer software for messaging, e-mail and facsimile applications, statistical analysis, security, data encryption, internet and client-server software, as well as electronic commerce and security software. PWI was founded in part by plaintiff Michael McKibben. Defendants Konstantin Malkov, Gregory I. Salvato, John J. Devine, John Pennybacker, and Robert Massey are all employees and/or directors of PWI, Inc.
 {¶ 8} Under the heading "history of events," in paragraphs 12 through 45 of their complaint, plaintiffs alleged that Michael and plaintiff Nancy McKibben are currently owners of common shares of stock of PWI, Inc. Plaintiffs further claimed that PWI, Inc., established business relationships with ATT Bell Labs and ATT Easy Commerce, and had raised approximately $750,000 in order to execute an initial public offering ("IPO") through M.H. Meyerson Co., who had issued PWI, Inc., a letter of intent to do so.
 {¶ 9} Plaintiffs also claimed that "no objections or concerns" had been raised by any of the defendants regarding McKibbin's job performance, and that McKibbin had been "consistently assured" that the defendants "approved and supported the direction of PWI and the leadership abilities of Mr. McKibbin * * *." (Complaint, paragraphs 19-20.) However, "upon information and belief," plaintiffs maintained that in March 1997, defendants Salvato, Devine, Malkov, and others held secret meetings to discuss plans to "force the resignation of Mr. McKibbin as Chief Executive Officer * * * of PWI * * *" and to replace him with Mr. Devine. Plaintiffs further claimed that Malkov threatened to leave PWI, Inc., if McKibbin did not resign. Plaintiffs further claimed that the board of directors "encouraged Mr. McKibbin's resignation in order to prevent Malkov from leaving PWI," and maintain that McKibbin resigned "in reliance" upon these representations. (Complaint, paragraphs 21-29.)
 {¶ 10} Plaintiffs further claim that Malkov, Salvato and Devine "had agreed, on behalf of PWI, to create a favorable severance agreement for Mr. McKibbin in addition to preserving the IPO scheduled for the fall of 1997 * * *[.]" (Complaint, paragraph 30.) However, plaintiffs claim that as a result of the defendants' failure to offer said severance agreement, and the "reckless and fraudulent acts" of the defendants, that M. H. Meyerson elected not to proceed with the IPO. (Complaint, paragraph 33.) Plaintiffs also maintain that the defendants have modified PWI's business plan to the detriment of its shareholders, and further claim, "upon information and belief," that the defendants have misappropriated "assets/and or revenue of PWI * * *." (Complaint, paragraphs 34-45.)
 {¶ 11} In their first cause of action, plaintiffs allege that defendants fraudulently misrepresented: (1) that they approved and supported McKibbin's leadership of PWI; (2) that they were committed to the growth and prosperity of PWI, and to the pursuit of "liquidity events" which would "realize significant returns for all shareholders"; and (3) that they convinced McKibbin that Malkov would leave PWI if he did not resign.
 {¶ 12} In their first assignment of error, plaintiffs argue the trial court incorrectly determined that they had failed to comply with the mandatory requirements of Civ.R. 23.1. Specifically, plaintiffs argue that the trial court erred when it determined that their complaint fails to contain either an allegation that plaintiffs made a demand to sue upon the board of directors, or specific allegations setting forth a sufficient reason that such a demand would be futile. Civ.R. 23.1 provides in part:
 {¶ 13} "In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his shares thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort. * * *"
 {¶ 14} Thus, plaintiffs' complaint must contain specific allegations that either: (1) the plaintiffs made a demand upon the board of directors to sue and the reason why that demand failed; or (2) specific reasons why the plaintiffs failed to make any demand at all.
 {¶ 15} In their briefs, plaintiffs maintain that they have complied with the requirement set forth in Civ.R. 23.1, referring this court to two portions of their complaint which they maintain demonstrate compliance with Civ.R. 23.1. First, plaintiffs direct the court's attention to paragraph 39 of their complaint, which provides as follows:
 {¶ 16} "From the time of the change in management of the company to the present, Mr. McKibbin has repeatedly, on several occasions, at each shareholder meetings [sic] and in writing, requested information from PWI, Malkov, Salvato and Devine and its other known directors regarding the direction of the company, its marketing efforts, the preservation of its intellectual property assets, the security of its assets, software code, the status of contracts and realization of value in the ATT relationship, explanations of why Salvator after maintaining publicly at the most recent board meeting that the company stock had no value, then solicited PWI shareholders to sell their shares to himself personally, and McKibbin also sent pre-litigation discovery requests pursuant to the Ohio Civ. Rule 34 and Ohio Revised Code Section 2317.48, in June of 2000, which have been stonewalled by Defendants."
 {¶ 17} Plaintiffs then quote the following from paragraph 89 of their complaint:
 {¶ 18} "Prior to the commencement of this action, plaintiff brought the concerns alleged herein to the attention of the Directors of PWI seeking action. However, based upon the response of the Directors towards Plaintiff both personally and in writing, Plaintiff determined that any and all future efforts would be futile."
 {¶ 19} Plaintiffs' complaint, and particularly the portions of the complaint relied upon by the plaintiffs to support this appeal, clearly fail to set forth that the plaintiffs made any demand upon the board of directors of PWI to bring suit on behalf of the corporation or its shareholders, or that the directors in any specific manner wrongfully, fraudulently, arbitrarily, or in bad faith refused that demand. Our review reveals that the most that can be taken from the complaint in this regard is that plaintiffs brought their "concerns" regarding the operation of PWI to the board and that plaintiffs were unsatisfied with the board's response. In pargraph 89, plaintiffs state that they brought their "concerns" to the directors "seeking action." However, precisely what action sought by the plaintiffs is not alleged. Moreover, at no point in the complaint, do the plaintiffs even allege that they made any demand upon the board. In Weston v. Weston Paper and Mfg. Co. (1996),74 Ohio St.3d 377, 379, the Ohio Supreme Court held:
 {¶ 20} "Civ.R. 23.1 establishes the requirements for maintaining a shareholders' derivative action. Specifically, complaining shareholders must: (1) spell out the efforts made to have the directors or the other shareholders take the action demanded; (2) explain why they failed in this effort or did not make it; and (3) show that they `fairly and adequately' represent the interests of other shareholders `similarly situated.' * * * "
 {¶ 21} Additionally, plaintiffs fail to allege any sufficient reason why a demand, if one had been made, would have been futile. As explained in Drage v. Proctor Gamble (1997), 119 Ohio App.3d 19:
 {¶ 22} "The directors of a corporation are charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forgo a lawsuit. R.C. 1701.59(A) states in part that `[e]xcept where the law, the articles, or the regulations require action to be authorized or taken by shareholders, all of the authority of a corporation shall be exercised by or under the direction of its directors.'
 {¶ 23} "Under Ohio law, it is presumed that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation. R.C. 1701.59(C)(1); Abrahamson v. Waddell (1992), 63 Ohio Misc.2d 270, 273. The board of directors has the primary authority to file a lawsuit on behalf of the corporation. Wadsworth v. Davis (1862), 13 Ohio St. 123, 130-131. The shareholders may make a demand on the directors to bring a suit on behalf of the corporation, but no shareholder has an independent right to bring suit unless the board refuses to do so and that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors. Cooper v. Cent. Alloy Steel Corp. (1931), 43 Ohio App. 455. * * *
 {¶ 24} "An exception to the general demand rule permits a shareholder to proceed with an independent suit without making a demand when the shareholder can demonstrate that the demand would have been futile.
 {¶ 25} "* * *
 {¶ 26} "Futility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed. It is not enough to show that the directors simply disagree with a shareholder about filing a suit. See Kamen v. Kemper Fin. Serv., Inc. (C.A.7, 1991), 939 F.2d 458,462; Heineman v. Datapoint Corp. (Del. 1992), 611 A.2d 950.
 {¶ 27} "`The bedrock of [corporate law] is the rule that the business and affairs of a corporation are managed by and under the direction of its board.' Pogostin v. Rice (Del. 1984), 480 A.2d 619,624. As stated above, Ohio law endorses this principle of corporate law. R.C. 1701.59. All acts of a board of directors of an Ohio corporation are presumed to have been taken in good faith. R.C. 1701.59(C)(1); Abrahamson v. Waddell (1992), 63 Ohio Misc.2d 270, 273, 624 N.E.2d 1118, 1120.
 {¶ 28} "Because of these fundamental precepts of corporate law, courts indulge the fiction (or presumption) that directors can make an unbiased, independent business judgment about whether it would be in the corporation's best interests to sue some or all of the other directors. Thus, courts have consistently rejected the idea that demand is always futile when the directors are targeted as the wrongdoers in the suit the shareholders wish the corporation to bring; that is, a bare allegation that the directors would not want to sue themselves or each other does not show that demand would be futile. See, e.g., Aronson v. Lewis (Del. 1984), 473 A.2d 805, 818; Lewis v. Graves (C.A.2, 1983), 701 F.2d 245,248-249; Heit v. Baird (C.A.1, 1977), 567 F.2d 1157, 1162; Lewis v. Anselmi (S.D.N.Y. 1983), 564 F. Supp. 768, 772." (Emphasis sic.) Id. at 24-25.
 {¶ 29} The unsupported claim that the plaintiffs requested information from the board, and the claim that further questioning of the board would be futile, does not fulfill the specificity or demand requirement mandated by Civ.R. 23.1. As this court explained in Grand Council of Ohio v. Owens (1993), 86 Ohio App.3d 215, corporate management "must be given the first opportunity to institute * * * litigation since, `[as] a general principle, the responsibility for determining whether or not a corporation shall enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors.' " Id. at 221-222, quoting Smachlo v. Birkelo (D.Del. 1983), 576 F. Supp. 1439,1443.
 {¶ 30} Alternatively, relying upon this court's decision in Spangler v. Redick (Feb. 13, 1990), Franklin App. No. 88AP-185, plaintiffs argue that compliance with Civ.R. 23.1 was not required. In Spangler, the defendant appealed from a verdict finding him liable for breach of fiduciary duty based upon the defendant's removal of equipment which secured loans from the Small Business Association ("SBA"). On appeal, defendant claimed that the plaintiff(s) failed to make a proper Civ.R. 23.1 demand. However, this court explained that "the history of conflict between the parties, including the express refusal of [the defendant] at the December 9, 1982, meeting to return the equipment to the SBA, satisfies the [Civ.R. 23.1] requirement." Id. We find the Spangler case to be clearly distinguishable from the case at bar. Accordingly, for the foregoing reasons, plaintiffs' first assignment of error is overruled.
 {¶ 31} In their second assignment of error, plaintiffs maintain that the trial court incorrectly concluded that their complaint does not contain any individual claims. Because there is a distinction between mere factual claims that acts have been directed towards an individual, and actual legal claims brought by that person for individual damages, we also overrule plaintiffs' second assignment of error.
 {¶ 32} In their complaint, plaintiffs specifically state that that they "bring this action on behalf of the shareholders of PWI." Significantly, at no point in the complaint is there any individual claim by a named person against the defendants. In the first cause of action, plaintiffs claim that PWI's shareholders, including McKibbin, relied upon fraudulent representations made by defendants, and that the shareholders were subsequently damaged "as shareholders," in an amount in excess of five million dollars. In the second cause of action, plaintiffs collectively maintain that defendants breached the fiduciary duty owed to plaintiffs, and that the breach had "a detrimental effect on the shareholders of PWI." Again, the "plaintiffs" alleged that they had been damaged in excess of five million dollars. In their third cause of action, plaintiffs contend that the defendant engaged in a conspiracy to force the resignation of McKibbin as CEO, and that they, including the fictitious John Doe shareholder, were injured by McKibbin's resignation because the net worth of PWI was impaired.
 {¶ 33} In their fourth cause of action, plaintiffs claim that defendants negligently failed "to act in the best interests of PWI and its shareholders and to protect the value of PWI." As a result, plaintiffs claim that they have been damaged in excess of twenty-five thousand dollars. Similarly, in their fifth cause of action, plaintiffs claim that defendants diverted corporate opportunities from PWI and its shareholders damaging the plaintiffs. In their sixth cause of action, plaintiffs claim the defendants "converted personal property of PWI * * *" for the defendants' own use. Continuing, in their seventh cause of action, plaintiffs contend that defendants failed to maintain accurate corporate books in violation of Ohio securities and license laws entitling plaintiffs to receipt of forfeitures.
 {¶ 34} In their eighth cause of action, plaintiffs claim that defendants, "particularly Salvato engaged in manipulative practices `to acquire control of the corporation * * *'" and that "[a]s a result of acquiring control and manipulation of corporate monies and opportunities for his personal benefit and not to benefit shareholders, any profit realized by Salvato inures to and should be disgorged to PWI." (Complaint, paragraphs 81-82.) Finally, in their ninth cause of action, plaintiffs specify a derivative shareholder claim, and in their tenth cause of action, plaintiffs assert a general claim for punitive damages.
 {¶ 35} In support of their second assignment of error, plaintiffs argue that the mere factual statements that McKibbin was "forced" to resign and that he was promised a "favorable severance agreement," actually constitute legal claims and/or causes of action against defendants in this particular complaint. As noted by the trial court, while these facts, if true, might support individual claims by McKibbin against one or more of the defendants, these claims were not properly raised or pled in this complaint. For example, McKibbin failed to raise any individual claim or plead any specific damage as a result of his "forced" resignation, failed to plead any claim or damage as a result of the failure of defendants to provide him with a "favorable" severance agreement, and also failed to raise any individual claim or plead specific damage as a result of the failure of defendants to provide him with his last pay check. Accordingly, plaintiffs' second assignment of error is also overruled.
 {¶ 36} Having overruled both assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK, P.J., and DESHLER, J., concur.