Alfred BLASBAND, derivatively on Behalf of DANAHER CORPO-RATION, Plaintiff,

v.

Steven M. RALES, Mitchell P. Rales, and John Doe 1–10, Defendants,

and

Danaher Corporation, Nominal Defendant.

Civ. A. No. 91–166–JLL.

United States District Court, D. Delaware.

Aug. 15, 1991.

Jeffrey S. Goddess of Saul, Ewing, Remick & Saul, Wilmington, Del., and Stephen A. Whinston of Berger & Montague, P.C., Philadelphia, Pa., of counsel, for plaintiff.

Stephen P. Lamb and Jaya Gokhale Turner of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., and Robert E. Zimet and Joseph Guglielmelli of Skadden, Arps, Meagher & Flom, New York City, of counsel, for defendants Steven M. and Mitchell P. Rales.

David C. McBride of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for nominal defendant Danaher Corp.

## OPINION

LATCHUM, Senior District Judge.

Plaintiff brings this shareholder's derivative action on behalf of Danaher Corporation ("Danaher") alleging breaches of fiduciary duties by defendants Steven M. Rales and Mitchell M. Rales (the "Rales brothers"), who are Chairman of the Board and President of Danaher, respectively, and directors of Easco Hand Tools, Inc. ("Easco"), now a wholly-owned subsidiary of Danaher. Also named as defendants, John Does 1–10, are the officers and directors of Easco at the time of the transactions described in the complaint. Jurisdiction is

based on diversity of citizenship. 28 U.S.C. § 1332(a) (1988).[1]

Presently before the Court is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(6) and 23.1, Fed.R.Civ.P. Docket Item ("D.I.") 9. After reviewing the parties' briefs (D.I. 11, 12, 14) and hearing oral argument, the Court will grant defendants' motion for the reasons stated below.[2]

### FACTUAL BACKGROUND [3]

Plaintiff Alfred Blasband acquired 1,100 shares of the common stock of Easco in May 1987. On February 19, 1990, Easco entered into a Merger Plan and Agreement with Danaher by which shareholders of Easco would receive .4175 shares of Danaher common stock for each share of Easco common stock they owned, and Easco would become a wholly owned subsidiary of Danaher. When the merger was effected in June 1990, plaintiff received 458 Danaher shares which he continues to hold. Plaintiff's complaint concerns the following actions taken by Easco's board prior to the merger.

In September 1988, Easco made a public offering of $100 million of senior subordinated notes. In the Prospectus filed with the Securities and Exchange Commission in connection with the offering, Easco stated that the proceeds of the offering would be used to repay outstanding indebtedness, for general corporate purposes, and to fund expansion of the business through internal growth and acquisitions as opportunities became available. The Prospectus stated that pending such uses, "the Company will invest the balance of the net proceeds from this offering in government and other marketable securities." According to Easco's Form 10–K for 1988, $30 million of the

proceeds were used to repay existing bank loans, and the remainder was "temporarily invested in marketable securities and cash equivalents." Schedule 1 of Easco's 1988 10–K revealed that Easco invested $61.9 million of the proceeds in high-yield corporate debt securities or "junk bonds."

In its Form 10–K for 1989, Easco stated the following with respect to its junk bond investments:

> The Company has temporarily invested the majority of the proceeds from its 1988 Senior Subordinated Notes offering in high-yield corporate debt securities. . . . During 1989, the market for these securities became volatile and some market values declined significantly. At December 31, 1989, the Company reduced the carrying value of its portfolio for what it believes to be a permanent decline in the value of the underlying securities. . . . Greater risk is generally associated with these high-yield securities, for which a thinly traded market exists and for which market quotations are not always available. If the Company were to liquidate its remaining high-yield investments, an additional reduction in carrying value of several million dollars would be probable.

The 1989 10–K indicated that the market value of Easco's junk bond portfolio had fallen $14 million below the company's cost. It also revealed that Easco had made additional junk bond investments during 1989. Easco's Form 10–Q for the quarter ending March 31, 1990, stated that the company had sold a portion of its junk bond portfolio and had realized a further loss of $1 million as a result.

■ Plaintiff contends that Easco's investment of between $61.9 million and

---

1. Plaintiff is a citizen of Florida. Nominal defendant Danaher is a Delaware corporation with its principal place of business in Washington, D.C. The Rales Brothers and the John Doe defendants are alleged to be residents of Washington, D.C., or Maryland, and presumably are citizens of either the District of Columbia or Maryland as well.

2. The Court's disposition of defendants' motion to dismiss renders defendants' motion to stay discovery (D.I. 16) moot.

3. The recited facts are drawn from the complaint (D.I. 1) and exhibits thereto. *Brambles USA, Inc. v. Blocker,* 731 F.Supp. 643, 644 n. 1 (D.Del.1990) (for purpose of motion to dismiss under Rules 12(b)(6) and 23.1, Fed.R.Civ.P., court accepts as true all well-pleaded factual allegations in complaint and considers attached exhibits).

$74.25 million in junk bonds during 1988 and 1989 was a waste of corporate assets and served no corporate purpose. He also alleges that the Prospectus was misleading because it represented that the proceeds of the note offering would be invested in government and other marketable securities when, in fact, they were invested in "illiquid, unmarketable and highly speculative junk bonds." D.I. 1 at ¶ 15. Plaintiff claims that the Easco board "fraudulently concealed their activities" from Easco shareholders by describing such investments as "temporary" in the 1988 and 1989 10-Ks. *Id.* at ¶ 16. He also alleges that the "decline in value of Easco's junk bond portfolio ... reduced Easco's stock price and its future prospects, thus directly and negatively impacting the market price of Easco stock, the exchange ratio and the number of Danaher shares received in the Merger." *Id.* at ¶ 35.[4]

At the time of the junk bond purchases, defendant Mitchell Rales was Chairman of Easco's Board and owned 25% of Easco's common stock, and defendant Steven Rales was a director of Easco and a 27% shareholder. Mitchell Rales also was at the time and continues to be the President and a director of Danaher, and Steven Rales was and is the Chairman of the Board of Danaher; together they own 44% of Danaher's common stock. According to plaintiff, in the mid–1980s the Rales brothers retained Drexel Burnham Lambert Inc. ("Drexel") to assist in their corporate acquisition strategy. Through junk bond financing arranged by Drexel, the Rales brothers expanded Danaher through several acquisitions, including that of Easco.

Plaintiff claims that at the time of the Easco note offering, which was underwritten by Drexel, Drexel was "under siege from a well-publicized and extensive Government investigation of its activities, focusing on its junk bond sales. As a result of this investigation, the market had become much less receptive to Drexel-un-

derwritten junk bonds and ... [t]hus, Drexel-related junk bonds had become highly speculative and illiquid." *Id.* at ¶ 22. In response to this situation, Drexel persuaded its clients, including the Rales brothers, to invest in Drexel-underwritten junk bonds. All of the corporate debt securities in which Easco invested the proceeds of its note offering were Drexel junk bonds. Thus, plaintiff claims, Easco's junk bond investments were made at the Rales brothers behest "for personal reasons relating to obligations they felt to Drexel. The proceeds of the Easco Notes Offering were used to create a slush fund for Drexel junk bonds rather than for legitimate corporate purposes of Easco." *Id.* at ¶ 33.

On October 25, 1990, an attorney acting on Alfred Blasband's behalf wrote a letter to Easco and Danaher in which he referred to statements contained in Easco's Prospectus and 1989 Form 10–K and questioned why the proceeds of the note offering had been used to purchase securities other than "government or other marketable securities" as stated in the Prospectus. The letter requested details regarding all of the securities purchased by Easco with the proceeds of the note offering. In a December 17, 1990 response, attorneys for Danaher and Easco stated that it had been determined that it would be inappropriate to provide the information requested in the October 25 letter because Easco had fully complied with federal securities laws in disclosing all material information concerning the note offering and subsequent use of the proceeds. The December 17 letter also stated that gathering of the extensive information requested in the October 25 letter would be time-consuming and highly disruptive of the day-to-day management of the companies' business. Plaintiff Blasband proceeded to file this lawsuit on March 25, 1991.

### DISCUSSION

Defendants seek to dismiss plaintiff's derivative action on the following grounds:

---

**4.** Generally, an allegation of mismanagement which depresses the value of stock states a derivative cause of action. *Kramer v. Western Pacific Indus., Inc.,* 546 A.2d 348, 353 (Del.1988). Thus, plaintiff's claim is properly considered derivative, and the Court will not explore alternative characterizations of plaintiff's cause of action as plaintiff has not urged the Court to do so.

(1) plaintiff has not made a proper demand; (2) the complaint does not adequately plead demand futility; and (3) plaintiff, a former Easco shareholder who is now a Danaher shareholder, does not have standing to sue on Easco's behalf and cannot sue to compel Danaher, now Easco's only stockholder, to pursue a claim against Easco's board because the complaint does not allege that Danaher was an Easco stockholder at the time of the transactions in question. As this is a diversity case, the Court proceeds to apply Delaware law in addressing each of defendants' arguments. *Kamen v. Kemper Fin. Serv., Inc.,* —— U.S. ——, 111 S.Ct. 1711, 1718 n. 6, 114 L.Ed.2d 152 (1991) (federal court sitting in diversity case must apply state law in analyzing compliance with demand requirement and futility exception); *Allison v. General Motors Corp.,* 604 F.Supp. 1106, 1116 n. 9 (D.Del.), *aff'd without opinion,* 782 F.2d 1026 (3rd Cir. 1985) (same); *Heit v. Tenneco, Inc.,* 319 F.Supp. 884, 886 (D.Del.1970) (applying Delaware law in analysis of derivative standing).

## I. *Improper Demand*

■ The complaint describes plaintiff's October 25, 1990 letter to the Danaher and Easco boards as a demand that the boards supply information and as a demand to pursue a claim against the Rales brothers. D.I. 1 at ¶¶ 11, 12, 17. In his answering brief, plaintiff characterizes the letter as merely a demand for information. D.I. 12 at 7 n. 6. An examination of the letter itself reveals that it is not a proper demand under Delaware law, because it does not "demand that the directors take action to remedy the alleged corporate injury for which derivative relief is now sought." *Herd v. Major Realty Corp.,* C.A. No. 10707, 1990 WL 212307, at *8 (Del.Ch. Dec. 21, 1990). *See also Seibert v. Harper & Row Publishers Inc.,* C.A. No. 6639, 1984 WL 21874, at *2 (Del.Ch. Dec. 5, 1984) (correspondence which does not request that specific corrective action be taken does not constitute demand). *Accord Allison,* 604 F.Supp. at 1117 ("At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the

wrongful acts and the harm caused to the corporation, and request remedial relief.")

■ Defendants argue that because the complaint characterizes the October 25 letter as a demand to pursue a claim, the fact that the letter does not constitute a proper demand mandates dismissal with prejudice. *Smachlo v. Birkelo,* 576 F.Supp. 1439, 1445 (D.Del.1983). Plaintiff responds that he never intended the October 25 letter to be a demand to institute litigation and that the Court should proceed to address his allegations of demand futility.

In *Smachlo,* the Court, having found plaintiff's demand inadequate, dismissed the suit with prejudice, thereby foreclosing the opportunity to reinstitute litigation after a proper demand was made. *Id.* Plaintiff here does not seek leave to make a proper demand because he alleges that such demand would be futile. The Delaware Supreme Court has twice held that a demand made after the institution of a derivative action alleging demand futility moots the issue of demand futility because by making a demand, a derivative plaintiff acknowledges the absence of any facts to support a finding of futility. *Spiegel v. Buntrock,* 571 A.2d 767, 775 (Del.1990); *Stotland v. GAF Corp.,* 469 A.2d 421 (Del. 1983). However, the circumstances of this case, i.e., correspondence which does not constitute a proper demand and is ambiguously characterized in the complaint, coupled with allegations of demand futility, differ from those in *Spiegel* and *Stotland.*

On several occasions the Delaware Court of Chancery, after finding a purported demand insufficient, has gone on to consider the adequacy of demand futility allegations. *Herd,* 1990 WL 212307, at *8; *Brook v. Acme Steel Co.,* C.A. No. 10276, 1989 WL 51674, at *3 (Del.Ch. May 11, 1989); *Seibert,* 1984 WL 21874, at *3. Defendants not having offered any reason why this Court should not take the chancery court's approach, the Court proceeds to examine plaintiff's allegations of demand futility.

## II. *Demand Futility*

The only fact to which the complaint points in alleging demand futility is the boards' December 17, 1990 response to plaintiff's October 25 letter, which plaintiff claims evidences demand futility with respect to the Danaher board because "a) the Board denied all wrongdoing by Easco officials; b) the Board refused to provide the easily obtained information requested by plaintiff; and c) the Board refused to conduct any investigation in response to plaintiff's letter." D.I. at ¶ 12. Plaintiff elaborates on his futility allegations in his answering brief by asserting (1) that the Rales brothers, who are Danaher's President and Chairman of its board and own 44% of Danaher's stock, dominate and control the Danaher board; and (2) that the sheer magnitude of Easco's junk bond investments and the various misleading statements Easco disseminated concerning the investment of the proceeds of the note offering create a reasonable doubt that the Easco board exercised sound business judgment. D.I. 12 at 10 & n. 10.

■ The parties' briefs consider the adequacy of plaintiff's demand futility allegations by applying the standard first enunciated by the Delaware Supreme Court in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), and endorsed in the Delaware Supreme Court's recent decision in *Levine v. Smith*, 591 A.2d 194 (Del.1991). Under *Aronson*, a plaintiff alleging demand futility must plead particularized facts creating a reasonable doubt that the board is independent and disinterested or that the challenged decision was otherwise the product of a valid exercise of business judgment. *Levine*, 591 A.2d at 205; *Aronson*, 473 A.2d at 814. "The demand futility test established in *Aronson* provides a standard for determining whether the directors who approved the challenged transaction are under an influence which precludes them from being 'considered the proper persons to conduct the litigation on behalf of the corporation.'" *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 (Del. 1988) (quoting *Aronson*, 473 A.2d at 814). Thus, the *Aronson* formulation is not entirely applicable in this case because the Easco board allegedly approved the challenged transaction but plaintiff's demand futility allegations concern the Danaher board, and there is no allegation that the membership of the two boards is identical. Plaintiff's argument, under *Aronson's* so-called second prong, that the magnitude of Easco's junk bond investments creates a reasonable doubt that the *Easco* board exercised sound business judgment is, therefore, irrelevant to the question of whether demand on the *Danaher* board is futile.

■ The premise of a shareholder's claim of demand futility is that the board is incapable of exercising its authority to pursue the derivative claims directly, *Levine*, 591 A.2d at 205, because the directors "are under an influence which sterilizes their discretion." *Aronson*, 473 A.2d at 814. The first prong of *Aronson* recognizes that a board may be disabled from making an impartial decision regarding whether or not to pursue a remedy for an alleged wrong to the corporation if the board is controlled by the purported wrongdoer or if the directors have a financial interest in the challenged transaction. *Levine*, 591 A.2d at 205; *Grobow v. Perot*, 539 A.2d 180, 188–89 (Del. 1988). Plaintiff has not alleged that the Danaher board is somehow financially interested in the challenged junk bond investments, and the allegations that the Rales brothers own 44% of Danaher's common stock and are President of Danaher and Chairman of its board do not alone raise an inference that the Danaher board is dominated and controlled by the Rales brothers. *Aronson*, 473 A.2d at 815, 816 (quoting *Kaplan v. Centex Corp.*, 284 A.2d 119, 123 (Del.Ch.1971)) (" 'Stock ownership alone, at least when it amounts to less than a majority, is not sufficient proof of domination or control.' ... [A] plaintiff charging domination and control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the [persons] doing the controlling.' ")

■ Finally, plaintiff argues that because the boards' December 17 letter re-

flects an unwillingness to investigate Easco's junk bond investments and remedy any wrongdoing, it would be useless for plaintiff to make a formal demand on the Danaher board to institute litigation because it undoubtedly would be refused. Plaintiff's argument misapprehends the nature of demand futility under Delaware law. "The test, as articulated by the Delaware courts, is not whether it appears unlikely on the evidence that the board will respond affirmatively to the demand.... Rather, the question is whether directors have the legal capacity to consider the demand disinterestedly." D. Drexler, L. Black, A. Sparks, Delaware Corporation Law & Practice § 42.03[2] at 42–11 (1991). *See also Levine,* 591 A.2d at 205; *Aronson,* 473 A.2d at 814. Because the December 17 letter casts no doubt on the Danaher board's ability to properly exercise its business judgment in considering a formal demand, it does not establish demand futility. *Cf. Allison,* 604 F.Supp. at 1113 ("A generalized claim that the Board failed to take action on the alleged wrongs ... does not in any way explain *why* the Board is disabled from assuming control of the litigation.") (emphasis in original).

Plaintiff's answering brief seeks leave to amend the complaint should the Court find his demand futility allegations inadequate. D.I. 12 at 20. The Court will deny plaintiff's request to amend his demand futility allegations and instead dismiss the complaint because, as the following discussion illustrates, plaintiff does not have standing to bring this derivative action.[5]

III. *Standing* [6]

■ Plaintiff makes various arguments in an effort to elude the contemporaneous ownership requirement of 8 Del.C. § 327 which has been interpreted to require a plaintiff bringing a derivative action on a corporation's behalf to own stock in the

5. Plaintiff does not seek leave to amend the complaint to allege facts sufficient to confer standing.

6. Nominal defendant Danaher expresses no view as to the individual defendants' argument relating to standing. D.I. 11 at 23.

corporation at the time of the wrongs alleged, at the time suit is instituted, and continuously throughout the litigation. *Heit v. Tenneco, Inc.,* 319 F.Supp. 884, 886 (D.Del.1970); *Kramer v. Western Pacific Indus., Inc.,* 546 A.2d 348, 354 (Del.1988). Because plaintiff is no longer an Easco stockholder, plaintiff brings this derivative action on Danaher's behalf to compel Danaher to pursue Easco's breach of fiduciary duty claims against the Rales brothers. In a derivative action, "a shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation." *Levine,* 591 A.2d at 200. "It follows that the stockholder cannot sue unless there is, at the time he or she brings the action, a cause of action which could be enforced by the corporation if it so desired...." 13 Fletcher Cyc. Corp. § 5947 at 104 (1991). As discussed below, the complaint does not indicate that Danaher has a cause of action against the Rales brothers for breaches of fiduciary duties to Easco, and, thus, the Court concludes that plaintiff does not have standing to bring suit derivatively on Danaher's behalf.

■ Plaintiff first contends that Danaher has a right to sue because the cause of action which Easco had against its board passed from Easco to Danaher as the corporation surviving the merger.[7] *See* 8 Del.C. § 259; *Lewis v. Anderson,* 477 A.2d 1040, 1044 (Del.1984). This position is contradicted by the allegation in the complaint that Easco survived the merger as a wholly owned subsidiary of Danaher. D.I. 1 at ¶ 7.

The complaint asserts an alternative theory that Danaher, as Easco's sole shareholder, "succeeded to all of Easco's rights and responsibilities with regard to the derivative claims made herein." D.I. 1 at ¶ 40. At oral argument plaintiff cited *Kramer v. Western Pacific Industries, Inc.,* 546 A.2d 348, 355 (Del.1988), for the

7. Danaher was referred to as the "surviving company" in plaintiff's answering brief, D.I. 12 at 16, and by plaintiff's attorney at oral argument.

proposition that a corporation's cause of action passes to its shareholder under these circumstances. However, nothing in *Kramer* suggests that the court there was relying on anything other than the reasoning in *Lewis,* that a cause of action belonging to a merged corporation passes to the surviving corporation in the merger under 8 *Del.C.* § 259. As stated *supra,* because Easco survived the merger, the *Lewis* rationale does not apply to transfer the cause of action from Easco to Danaher.

In his answering brief, plaintiff claims to bring this action "derivatively on behalf of Danaher in its capacity as sole shareholder of Easco." D.I. 12 at 17. This statement suggested to the Court that plaintiff was asserting a double derivative cause of action, i.e., he alleged a wrong had been done to Easco and that Danaher, as Easco's sole stockholder, had a right to bring a derivative action to redress the wrong but failed to do so. D. DeMott, Shareholder Derivative Actions § 2:02 at 11 (1987) (describing a double derivative action). The difficulty with characterizing this action as double derivative is that plaintiff has not alleged (nor does he seek leave to amend the complaint to allege) that Danaher was an Easco stockholder at the time of the purported wrongdoing. Thus, Danaher apparently cannot satisfy § 327's contemporaneous ownership requirement.

At the hearing on defendants' motion to dismiss, plaintiff's attorney argued that Danaher has a direct cause of action against the Rales brothers because, as a result of their breaches of fiduciary duties, Danaher purchased "damaged goods." However, the complaint alleges that the "decline in value of Easco's junk bond portfolio ... reduced Easco's stock price and its future prospects, thus directly and negatively impacting the market price of Easco stock, the exchange ratio and the number of Danaher shares received in the Merger." Therefore, if Danaher purchased "damaged goods," it did so at a discounted price and thus suffered no injury as a result of the individual defendants' alleged wrongdoing. *Cf. Courtland Manor, Inc. v. Leeds,* 347

A.2d 144, 148 (Del.Ch.1975) (present stockholder cannot recover for wrongs committed to those from whom it acquired stock at deflated value because otherwise present stockholder would reap a windfall).

Perhaps recognizing the weakness of his position regarding Danaher's standing to bring suit either directly or derivatively, plaintiff argues that as a Danaher stockholder, he continues to have an indirect interest in Easco, and, thus, he has standing to maintain this action on Easco's behalf according to the recent United States Supreme Court decision in *Gollust v. Mendell,* —— U.S. ——, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). The *Gollust* opinion is strictly a matter of interpretation of a federal statute, Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1988), which, unlike Delaware law, contains no contemporaneous ownership requirement. *Gollust,* 111 S.Ct. at 2180. In *Gollust,* the plaintiff satisfied the statutory standing requirement, i.e., he owned securities of the issuer, Viacom International, Inc. ("International") at the time the action was instituted. By means of a subsequent merger, International became the wholly owned subsidiary and only asset of Viacom, Inc. ("Viacom"), and the plaintiff received shares of Viacom stock in exchange for his stock in International. The Supreme Court held that plaintiff's indirect interest in the litigation by virtue of his stock ownership in the parent company, Viacom, sufficed to preserve his standing for Article III purposes. *Id.* at 2181.

Of course, the Court in this diversity case is confined to an analysis of Delaware law, beginning with the seminal Delaware case on the effect of a merger on derivative standing, *Lewis v. Anderson,* 477 A.2d 1040 (Del.1984). In *Lewis,* plaintiff brought a derivative action on behalf of Conoco, Inc. ("Old Conoco"), alleging that golden parachutes Old Conoco's board approved for company officers in anticipation of a potential takeover constituted a waste of corporate assets. While the action was pending, Old Conoco was merged into Du Pont Holdings, Inc., a wholly owned subsidiary of E.I. Du Pont de Nemours and Com-

pany ("Du Pont"). Du Pont Holdings, Inc., the surviving corporation in the merger, was renamed Conoco, Inc. ("New Conoco"). As a result of the merger, plaintiff received Du Pont stock in exchange for his shares of Old Conoco. The Delaware Supreme Court held that plaintiff no longer had standing to maintain his derivative cause of action on behalf of Old Conoco because Old Conoco's cause of action against its board passed to New Conoco, the corporation which survived the merger, by the terms of 8 *Del.C.* § 259.

Plaintiff argues that *Lewis* does not control this case because the *Lewis* court did not address the theory, derived from *Gollust*, which plaintiff advances here, i.e., that he has standing due to his indirect interest in Easco as a Danaher stockholder. Plaintiff claims that the policy of 8 *Del.C.* § 327, "to curtail strike suits by prohibiting potential plaintiffs from buying into a lawsuit" by purchasing stock in a corporation after the alleged wrong has occurred, *Brambles USA, Inc. v. Blocker*, 731 F.Supp. 643, 648 (D.Del.1990), would not be offended by allowing plaintiff to maintain this claim because he was an Easco stockholder at the time of the alleged wrongdoing. Although plaintiff is correct in his contention that *Lewis* did not consider the "indirect interest" argument plaintiff makes in this case, the Delaware Court of Chancery has done so on more than one occasion.

In *Schreiber v. Carney*, 447 A.2d 17 (Del.Ch.1982), the plaintiff was permitted to bring a derivative action on behalf of Texas International even though his Texas International shares had been converted into shares of Texas Air, a newly-formed holding company which retained Texas International as a wholly owned subsidiary. Because the share for share merger resulted in a company that was "virtually identical" to the former company, the court concluded that plaintiff's ownership of the

business enterprise was unchanged. *Id.* at 22. The *Schreiber* court distinguished prior cases, which had found that plaintiff shareholders had no post-merger standing to maintain derivative actions, because they involved "cash-out mergers or mergers with outside or preexisting corporations with substantial assets." *Id.* The *Lewis* court recognized *Schreiber* as an "exception" to the contemporaneous ownership rule in the merger context. *Lewis*, 477 A.2d at 1046 n. 10.

In *Bonime v. Biaggini*, Nos. 6925, 6980, 1984 WL 19830 (Del.Ch. Dec. 7, 1984), *aff'd without opinion*, 505 A.2d 451 (Del.1985), a case decided shortly after *Lewis*, the Delaware Court of Chancery again considered the "indirect interest" theory of post-merger standing. In *Bonime*, plaintiffs, shareholders of Southern Pacific Company ("Southern Pacific"), brought a double derivative action to compel Southern Pacific to bring a derivative action on behalf of its wholly owned subsidiary, Southern Pacific Transportation Company ("SPTC"), against SPTC's board for alleged antitrust violations. While the litigation was pending, Southern Pacific and Santa Fe Industries, Inc. ("Santa Fe"), effectuated a merger by which Southern Pacific and Santa Fe became wholly owned subsidiaries of a new holding company, Santa Fe–Southern Pacific Company ("SFSP"). Plaintiffs received SFSP common stock in exchange for their holdings in Southern Pacific.

The *Bonime* court concluded that, unlike the situation in *Schreiber*, the SFSP shares held by plaintiffs represented property interests "distinctly different from that which they held as shareholders of Southern Pacific," and, thus, plaintiffs lost standing to maintain their derivative cause of action on Southern Pacific's behalf. *Bonime*, 1984 WL 19830, at *3.[8] The Court considers the facts before it more analogous to those in *Bonime* than to those in *Schreiber*, and, thus, rejects plaintiff's ar-

---

**8.** The *Bonime* court suggested that only SFSP had standing to maintain the derivative claim originally brought by plaintiffs. *Bonime*, 1984 WL 19830, at *3. However, the opinion did not go on to consider the fact that 8 *Del.C.* § 327 would preclude SFSP from pursuing the deriva-

tive litigation as Southern Pacific's only stockholder because SFSP was not a Southern Pacific stockholder at the time of the alleged wrongdoing. Thus, the Court considers the statement in *Bonime* regarding SFSP's standing as dictum.

gument here that he has standing due to his indirect interest in Easco as a Danaher stockholder.

## CONCLUSION

For the foregoing reasons, the Court will enter an order granting defendants' motion to dismiss plaintiff's derivative action under Rules 12(b)(6) and 23.1, Fed.R.Civ.P.