Michael MROZ and Susan Mroz Plaintiffs,

v.

HOALOHA NA EHA, INC.; Na Hoaloha Ilima, LLC; Michael Moore; Timothy Moore; Robert Aguiar; and Kevin Butler, Defendants.

No. CIV.04–00078 ACK/KSC.

United States District Court, D. Hawai'i.

Feb. 22, 2005.

Robert Carson Godbey, Jess H. Griffiths, Chad M. Iida, Godbey Griffiths Reiss, Honolulu, HI, Jack R. Naiditch, Paia, HI, for Michael Mroz, Susan Mroz, plaintiffs.

Gary G. Grimmer, John P. Manaut, Carlsmith Ball, John Y. Yamano, Becky T. Chestnut, Wendy F. Hanakahi, McCorriston Miller Mukai, MacKinnon LLP, Paul

Alston, Thomas E. Bush, Alston Hunt Floyd & Ing, Honolulu, HI, for Hoaloha Na Eha, Inc., a Hawaii corporation, Na Hoaloha Ilima, LLC, a Hawaii limited liability company, Michael Moore, Timothy Moore, Robert Aguiar, Kevin Butler, defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS HOALOHA NA EHA, LTD. AND NA HOALOHA ILIMA, LLC'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

#### I. Factual History

In March 1987, four friends, Defendants Michael Moore, Timothy Moore, Robert Aguiar, and Kevin Butler ("the friends"), had the opportunity to purchase The Old Lahaina Luau, a luau business in Maui. The friends agreed to form a company called Eha Partners, Inc. ("Eha") to operate the business. The friends sought outside sources of funding to fund the initial operations of the luau business through Eha. Startup funds were gathered from the friends and families of Defendants Michael Moore and Robert Aguiar. Defendant Kevin Butler also approached his brother, Plaintiff Michael Mroz, and sister-in-law, Plaintiff Susan Mroz ("Plaintiffs"), for a contribution to Eha. The Plaintiffs agreed to contribute $5,000 in return for a 10% stock interest in Eha. Plaintiffs' 10% shareholder status in Eha is reflected in Eha's Articles of Incorporation, dated March 17, 1987, as well as a stock certificate in Plaintiffs' names.

The friends decided to purchase Whaler's Pub, Inc. ("Whaler's Pub") a nearby restaurant, owned by George Rotenkolber, that held a liquor license. On November 10, 1987, the friends established Hoaloha Na Eha, Ltd. ("Old Hoaloha") to purchase Whaler's Pub. However, Whaler's Pub was to continue operating as a separate entity. Under the express terms of Old Hoaloha's Articles of Incorporation, each of the friends was to receive 500 shares of voting stock and Rotenkolber was to receive 150,000 shares of non-voting stock. The parties agree that Plaintiffs loaned $40,000 to the friends to assist in the purchase of Whaler's Pub. However, Plaintiffs argue that the $40,000 was in exchange for repayment of the loan *and* a promise of a 10% ownership interest in Old Hoaloha *and* a promise of a 10% ownership interest in Whaler's Pub. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 7–8). The Plaintiffs further contend that the friends told them that they could not provide them with stock for their interest in Whaler's Pub, due to their lawyer's advice regarding the liquor license, but assured Plaintiffs that they were 10% owners and the ownership interest would be formalized in due course. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 1–2,7). Defendants[1] dispute this contention and assert that Plaintiffs agreed to loan the $40,000 in exchange for repayment at an interest rate of approximately 10%. (Defs.' Mot. for Summ. J at 8–9). Defendants attached to their Motion for Summary Judgment a copy of a promissory note dated November 11, 1988 indicating this arrangement, signed by Timothy Moore as Secretary of Old Hoaloha. (Ex. I of Defs.' Mot. for Summ.). The Defendants allege that the friends and Plaintiffs expressly agreed that Plaintiffs would not receive any stock interest in Old Hoaloha. (Defs.' Mot. for Summ. J at 9). The De-

---

1. The Court will refer to Defendants Hoaloha Na Eha, Ltd. and Na Hoaloha Ilima, LLC as the "Defendants" throughout this Order. The Court will refer to the remaining defendants as the friends or by their individual names when necessary to avoid any confusion.

fendants further allege that Plaintiffs agreed to this arrangement because they wanted to avoid any liability resulting from the liquor license and other issues such as necessary paperwork and investigation for out-of-state applicants. (Defs.' Mot. for Summ. J at 9). Plaintiffs argue that the friends always assured Plaintiffs that they were 10% owners of the entire luau business. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 8).

On February 12, 1992, Articles of Merger were filed which merged Eha and Old Hoaloha into Whaler's Pub. The successor entity then changed its name from Whaler's Pub, Inc. to Hoaloha Na Eha, Ltd. ("New Hoaloha" or "Hoaloha Corporation"). Plaintiffs allege that they were never notified of this merger and that the Articles of Merger falsely state that they, as stockholders and directors of Eha, approved of the merger. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 1). However, Defendants contend that prior to Eha's termination by the merger, it was verbally agreed that Plaintiffs' shares in Eha were to be redeemed, cancelled, and cashed out at book value.[2] (Defs.' Mot. for Summ. J at 7). As a result, Defendants further contend that Plaintiffs had no further stock interest in Eha or in any other successor entity. (Defs.' Mot. for Summ. J at 7). Defendants further allege that because the "book value" of Plaintiffs' shares would have been "insignificant," allegedly about $2,000, Plaintiffs never demanded or pursued any claim to recover the value of the redeemed shares. (Defs.' Mot. for

Summ. J at 7). Defendants suggest that payment for the redeemed shares was an issue that simply fell through the cracks because it was not a significant amount. (Defs.' Mot. for Summ. J at 7).

Plaintiffs and Defendants agree that since Eha was a Subchapter S corporation, K–1s were issued to Eha's shareholders. Defendants allege that they stopped issuing K–1s by 1992 and that Defendant Butler assumed responsibility for communicating this to Plaintiffs. (Defs.' Mot. for Summ. J at 7). The Defendants further allege that after Plaintiffs stopped receiving any financial information and K–1s for Eha, they never demanded any stock claim and never took any steps to assert an ownership interest. (Defs.' Mot. for Summ. J at 7). Defendants also contend that Plaintiffs never received any financial information in the successor entity. (Defs.' Mot. for Summ. J at 7). Plaintiffs dispute these allegations and argue that when Plaintiff Michael Mroz did not receive a K–1 in 1993, he contacted Defendant Timothy Moore who simply replied that K–1s were not going to be required anymore. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 10). Plaintiffs allege that the friends ran the business informally and that Plaintiffs relied on their bond of trust with the friends at least through March of 2002 when the minutes for New Hoaloha's Board of Directors' meetings from 1993 to 2001 and the minutes of New Hoaloha's shareholders' meetings in 2002 were fabricated and backdated by the friends.[3] (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 11).

---

**2.** Despite Defendants' allegations regarding redemption of Plaintiffs' shares in Eha, Plaintiffs were both listed, immediately prior to the merger, as being directors of Eha on the Articles of Merger filed with the DCCA. (Exhibit A of Defs.' Mot. for Summ. J.). Defendants also produced minutes of the annual meeting of Eha stockholders dated March 15, 1992, one month after the merger ending Eha's corporate existence. (Exhibit B of Defs.' Reply to Pls.' Mem. in Opp'n to Mot.

for Summ. J.). Moreover, Plaintiffs still retain their stock certificate for 100 shares in Eha.

**3.** Plaintiffs produced an e-mail dated March 6, 2002 from Defendant Timothy Moore to Defendant Kevin Butler explaining that the corporate minutes were being generated for the previous ten years because they had not been done annually. (Ex. 7 of Pls.' Concise Statement of Facts).

Defendants allege that it was not until Plaintiffs' brother Defendant Kevin Butler resigned from the companies and commenced efforts to extract an unreasonable buyout of his minority ownership interest from New Hoaloha that Plaintiffs began to assert a right or entitlement to stock in Old Hoaloha, Whaler's Pub and New Hoaloha. (Defs.' Mot. for Summ. J at 10). Defendants further state that Plaintiffs have never been formally authorized to receive and have never been given any shares of stock in any of the friends' other businesses or companies and that Plaintiffs had actual or constructive notice of this through their brother Defendant Butler. (Defs.' Mot. for Summ. J at 12). Defendants also point out that all relevant ownership interests have been recorded in public records since 1992. (Defs.' Mot. for Summ. J at 12). Defendants allege that Plaintiffs never made a demand for the authorization or delivery of any stock until just before filing this suit in 2004 and that Plaintiffs never pursued any contract claim to authorize and deliver stock in New Hoaloha. (Defs.' Mot. for Summ. J at 12).

The friends together with Troy Yamaguchi decided to expand their business and relocate to a 2.5 acre lot at the Cannery Mall in Lahaina. The friends then converted the old luau site at 505 Front Street into what became known as the Feast at Lele. On December 3, 1997, Na Hoaloha Ilima, LLC was formed to operate the Feast at Lele and to manage the entertainment part of the business. The defendants claim that at no point were Plaintiffs ever promised any interest or shares in Na Hoaloha Ilima, LLC and Plaintiffs never made any capital contribution to the company. (Defs.' Mot. for Summ. J at 14). Plaintiffs allege that the friends never notified them of the formation of Na Hoaloha Ilima but that the friends' interest in Na Hoaloha Ilima was funded with New Hoaloha's assets. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 12).

In August 2002, Plaintiffs allege that there was a significant personal dispute between Defendant Kevin Butler and the friends. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 12). At that time, Defendant Butler asked about Plaintiffs' alleged 10% interest in the luau business and asked the friends to confirm that interest. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 12). The friends, however, allegedly denied that Plaintiffs had an interest in the luau business, Eha, Old Hoaloha, or Whaler's Pub. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 12). Plaintiffs allege that this was the first time that they learned that the friends claimed that Plaintiffs had no interest in the luau business. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 13).

## II. *Procedural History*

On February 3, 2004, Plaintiffs filed their Complaint in this matter. The Counts alleged are as follows: Count 1—Breach of Contract Under the First Agreement; Count 2—Breach of Contract Under the Second Agreement; Count 3—Fraud; Count 4—Breach of Fiduciary Duty to Plaintiffs; Count 5—Unjust Enrichment; Count 6—Fraudulent Concealment; Count 7—Civil Conspiracy to Gain Sole Control and Ownership of The Old Lahaina Café & Luau and Whaler's Pub Businesses; Count 8—Derivative Claims on Behalf of New Hoaloha.

On March 30, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. each filed an Answer to the Complaint.

On April 1, 2004, Defendant Kevin Butler filed an Answer to Plaintiffs Complaint and a Cross-claim against Defendants Na Hoaloha Ilima, LLC; Hoaloha Na Eha, Inc.; Michael Moore; Timothy Moore; and Robert Aguiar.

On April 2, 2004, Defendants Michael Moore, Timothy Moore, and Robert Agu-

iar filed an Answer to Plaintiffs' Complaint.

On April 23, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. each filed an Answer to Defendant Kevin Butler's Cross-claim.

On April 26, 2004, Plaintiffs and Defendants filed Scheduling Conference Statements.

On May 3, 2004, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Reply to Defendant/Cross–Claimant Kevin Butler's Cross–Claim.

On May 3, 2004, a Rule 16 Scheduling Conference was held before Magistrate Judge Kevin S. Chang. On May 4, 2004 Magistrate Chang filed a Rule 16 Scheduling Order. On August 25, 2004, a Status Conference was held before Magistrate Chang, and on August 26, 2004 he filed an Amended Rule 16 Scheduling Order.

On September 14, 2004, Defendant Kevin Butler filed his First Amended Cross–Claim against Defendants Michael Moore; Timothy Moore; Robert Aguiar; Na Hoaloha Ilima, LLC; and Hoaloha Na Eha, Inc.

On September 24, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed an answer to Defendant Kevin Butler's First Amended Cross–Claim; Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed a Cross–Claim against Defendant Kevin Butler; and Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed a Counter–Claim against Plaintiffs.

Also on September 24, 2004, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Reply to Defendant/Cross–Claimant Kevin Butler's First Amended Cross–Claim; filed a Cross–Claim against Kevin Butler; and filed a Counterclaim against Plaintiffs.

On October 6, 2004, Defendant/Cross–Claimant Kevin Butler filed an Answer to Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Cross–Claim and an Answer to Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc.'s Cross–Claim.

On October 14, 2004, Plaintiffs filed an Answer to Defendants Michael Moore, Timothy Moore, and Robert Aguiar's Counter–Claim and an Answer to Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc.'s Counter–Claim.

On December 7, 2004, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed this Motion for Summary Judgment on Plaintiffs' Complaint.

On January 7, 2005, a Status Conference was held before Magistrate Judge Kevin S. Chang, and Magistrate Chang filed a Second Amended Rule 16 Scheduling Order.

On January 27, 2005, Defendants Michael Moore, Timothy Moore, and Robert Aguiar filed a Statement of No Opposition to Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc.'s Motion for Summary Judgment on Plaintiffs' Complaint.[4]

Also on January 27, 2005, Plaintiffs filed an Opposition to Motion for Summary Judgment.

On February 3, 2005, Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc. filed a Reply to Plaintiffs Memorandum in Opposition to Motion for Summary Judgment.

Defendants' Motion for Summary Judgment was heard on February 14, 2005.

---

**4.** The Court notes that Defendant Kevin Butler failed, contrary to LR 7.4, to file a statement of his position regarding Defendants Na Hoaloha Ilima, LLC and Hoaloha Na Eha, Inc.'s Motion for Summary Judgment. At the hearing, counsel for Defendant Kevin Butler represented that his client was taking no position as to the Motion.

## STANDARD

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[5] Fed. R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[6] *Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n,* 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union School Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by " 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). The Court's role is not to make credibility assessments. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505. Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec.,* 475 U.S. at 586, 106 S.Ct. 1348; *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.,* 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence tending to support the complaint." *T.W. Elec. Serv.,* 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the

---

**5.** Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed.R.Civ.P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

**6.** Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986).

burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## DISCUSSION

■ In diversity actions, federal courts generally apply state statutes related to the commencement and tolling of statutes of limitations. *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 745–46, 100 S.Ct. 1978, 1982–83, 64 L.Ed.2d 659 (1980); *Heiser v. Ass'n of Apartment Owners of Polo Beach Club,* 848 F.Supp. 1482, 1484 (D.Hawai'i 1993). Different causes of action arising from a single transaction may be plead together. *Au v. Au,* 63 Haw. 210, 626 P.2d 173, 177 (1981). However, where two or more causes of action arise from a single transaction, different statutes of limitations are applicable to the separate claims. *Id.* The proper standard to determine the relevant limitations period is the nature of the claim and not the form of the pleading. *Id.* Finally, the nature of the right or claim is determined from the allegations in the pleadings. *Id.*

### I. Statute of Limitations for Contract Claims

■ The parties do not dispute that Hawaii's six-year statute of limitations applies to Plaintiffs' contract claims (Counts 1 and 2 of Complaint). Haw.Rev.Stat. § 657–1(1)(1985). Under Hawaiian law, a cause of action arises under a contract when the contract is breached. *Wiegand v. Allstate Ins. Co.,* 68 Haw. 117, 706 P.2d 16, 20 (1985); *Au v. Au,* 63 Haw. 210, 63 Haw. 263, 626 P.2d 173, 180 (1981). However, Plaintiffs claim that the statutory doctrine of fraudulent concealment and the common law doctrine of equitable estoppel toll the

six year statute of limitations otherwise applicable to their contract claims.[7] (Complaint at 21).

If a person "fraudulently conceals the existence of the cause of action or the identity of any person who is liable for the claim from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same *discovers or should have discovered,* the existence of the cause of action ... although the action would otherwise be barred by the period of limitations." Haw. Rev.Stat. § 657–20 (1986) (emphasis added). Fraudulent concealment is defined as "employment of artifice, planned to prevent inquiry or escape investigation, and mislead [sic] or hinder acquirement of information disclosing a right of action." *Au v. Au,* 63 Haw. 210, 63 Haw. 263, 626 P.2d 173, 178 (1981) (citations omitted). Furthermore, the acts relied on must be of an affirmative character and fraudulent. *Id.* "The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action there can be no fraudulent concealment.... It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim." *Id.*

---

7. Plaintiffs assert and Defendants do not contest that any differences in the doctrines of fraudulent concealment and the common law doctrine of equitable estoppel are not relevant here. Indeed the United States Court of Appeals for the Ninth Circuit uses the terms interchangeably. *See Guerrero v. Gates,* 357

F.3d 911, 919 (9th Cir.2004) ("[e]quitable estoppel, also termed fraudulent concealment, halts the statute of limitations ...."). Thus, the Court will simply address the doctrine of fraudulent concealment, as provided for in Hawaii Revised Statutes § 657–20 (1986).

### a. *Count 1*

Count 1 of Plaintiffs' complaint alleges that the friends' refusal to deliver stock certificates in New Hoaloha is a breach of their promise to give Plaintiffs a 10% interest in The Old Lahaina Café and luau business. (Complaint at 21 ¶ 106). Plaintiffs further allege that "[b]y reason of the merger of Old Hoaloha and Eha into Whaler's Pub, and the subsequent change of name of Whaler's Pub into New Hoaloha, [Plaintiffs] are entitled to their equivalent share of the common stock of New Hoaloha, representing their 10% interest in The Old Lahaina Café and luau business." (Complaint at 21 ¶ 108). Plaintiffs request an injunction compelling New Hoaloha to issue a stock certificate.

Plaintiffs allege that the friends executed Articles of Merger which fraudulently indicated that Plaintiffs voted, as both directors and shareholders of Eha, to approve the merger of Eha into Whaler's Pub on February 12, 1992. The Articles of Merger indicate that all outstanding shares of Eha voted in favor of the merger and that the Board of Directors of Eha adopted a resolution approving the merger. (Exhibit A of Defs.' Mot. for Summ. J). However, Plaintiffs allege that their shares were never redeemed, they never received notice of the merger as shareholders or directors, and they never voted in favor of the transaction. Defendants allege that prior to Eha's termination by the merger, it was verbally agreed that Plaintiffs' shares in Eha were to be redeemed, cancelled, and cashed out at book value.[8] (Defs.' Mot. for Summ. J at 7). However, Defendants produced no evidence to support the alleged redemption agreement and admit that Plaintiffs were never paid for their shares. (Defs.' Mot. for Summ. J at 7). Moreover, Plaintiffs

still retain their stock certificates for 100 shares of Eha. Plaintiffs were both listed, immediately prior to the merger, as being directors of Eha on the Articles of Merger filed with the DCCA. (Exhibit A of Defs.' Mot. for Summ. J.). Plaintiffs allege that they did not become aware of the transaction until March 2002 when Defendant Butler allegedly sought to ensure that Plaintiffs' 10% interest in New Hoaloha was legally recognized. Plaintiffs claim that the agreement alleged in Count 1 was breached in 1992 when the merger documents were executed but that the breach was fraudulently concealed until 2002. (Pls.' Mem. in Opp'n to Mot. for Summ. J at 14).

Defendants deny the underlying allegation that Plaintiffs were ever promised any stock in New Hoalaoha but argue that even if such a contract claim were to exist, the breach occurred in 1992 and is thus barred by the 6–year statute of limitations applicable to contract claims. (Defs.' Mot. for Summ. J at 18). In the alternative, Defendants claim that Plaintiffs' argument regarding fraudulent concealment must fail because Plaintiffs had actual or constructive knowledge of the 1992 merger as a result of the public filing of merger documents.

Plaintiffs carry the burden of pleading and proving fraudulent concealment. *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir.1988). Plaintiffs must plead facts showing that Defendants affirmatively misled them, and that Plaintiffs had neither actual nor constructive knowledge of the facts giving rise to their claims. *Id.* This Court may grant summary judgment only if uncontroverted evidence "irrefutably demonstrates that a plaintiff discovered or should have discovered the cause of

---

**8.** Although the parties did not address either issue, the Court notes that it is questionable whether: 1) common stock can be redeemed; and 2) less than an entire class of stock can be redeemed.

action but failed to file a timely complaint." *Volk v. D.A.*, 816 F.2d 1406, 1417 (9th Cir.1987).

When Plaintiffs' allegations are viewed in the most favorable light, as they must be, the friends committed affirmative acts of concealment by representing, in the Articles of Merger merging Eha and Old Hoaloha into Whaler's, that Plaintiffs voted for and approved the proposed merger. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The Articles of Merger indicate that all outstanding shares of Eha voted in favor of the merger and that the Board of Directors of Eha adopted a resolution approving the merger. (Exhibit A of Defs.' Mot. for Summ. J). However, Plaintiffs allege that their shares were never redeemed, they never received notice of the alleged redemption or the merger as shareholders or directors, and they never voted in favor of either transaction. As shareholders of Eha, Plaintiffs' votes were required before the proposed merger could be accomplished. Haw.Rev.Stat. § 415–73(a) (1992). Furthermore, the friends had a statutory duty to provide written notice of the required shareholders' meeting.[9] Haw.Rev.Stat. § 415–73(a) (1992).

■ Defendants argue that irrespective of whether Plaintiffs received actual notice of the merger Plaintiffs had constructive notice and thus cannot establish fraudulent concealment. Defendants suggest that because Articles of Merger were filed and recorded, on February 12, 1992, with the Hawaii Department of Commerce and Consumer Affairs (DCCA) and because the articles then became public record, Plaintiffs had constructive notice of their alleged claim.

If Plaintiffs' allegations are credited, there was nothing to put them on notice that they should be checking DCAA records for a change in their status as shareholders and directors of Eha. The only occurrence, which the parties discuss, that could have alerted Plaintiffs to a change in their status as directors and shareholders of Eha was the fact that Plaintiffs stopped receiving K–1s that had been issued annually to the corporation's shareholders as required by its status as a Subchapter S corporation. However, Plaintiffs allege that when they did not receive K–1s in 1993, Plaintiff Michael Mroz contacted Defendant Timothy Moore and Defendant Moore simply replied that K–1s were not going to be required anymore. Plaintiffs allege that they accepted this statement relying on their bond of trust with the friends. The Court finds that material questions of fact exist as to whether the discontinued receipt of K–1s was enough to put Plaintiffs on notice of the enormous corporate changes that were taking place or to alert them that they should check public records for a change in their status as shareholders and directors, especially in light of the requirement that Plaintiffs as directors and shareholders receive notice and have the opportunity to vote on any such transaction.

Defendants cite *Eichman v. Fotomat Corp.*, 880 F.2d 149, 158 (9th Cir.1989) for the proposition that Plaintiffs had constructive notice of information contained in public records. In *Eichman* the plaintiff claimed that the defendant fraudulently concealed the full extent of its wrongs until after judgment was entered in his first case against the defendant. The court rejected Eichman's fraudulent conceal-

---

9. In addition to the affirmative acts of concealment alleged, nondisclosure may be equivalent to affirmative misstatement where a fiduciary relationship exists. *See, e.g., Hilton v. Mumaw*, 522 F.2d 588, 597 (9th Cir. 1975) (applying Washington law). Here Plaintiffs maintain that as directors and majority shareholders the friends were in a fiduciary relationship with Plaintiffs and thus had a duty to disclose the merger.

ment argument because it found that Eichman could have discovered the evidence through due diligence in the prosecution of his prior lawsuits. The court relied on the fact that there were two cases by other plaintiffs against the defendant that should have alerted Plaintiff to his additional claims. The court did not hold, however, that Eichman had constructive notice of the concealed claims as a matter of law because the evidence he was seeking was part of the public record. Rather, the court relied on the fact that Eichman had ample access to the evidence through the discovery process. The court pointed to the fact that Eichman could have discovered the concealed information through interrogatories or questioning of witnesses *as well as* through a published opinion in another case against the defendant. *Eichman* is clearly distinguishable from the case at hand. Here Plaintiffs were not pursuing claims against the friends, not engaging in discovery, and allegedly did not even know their interests were adverse to the friends. Thus, Plaintiffs allegedly were not alerted to the fact that they should be investigating the status of their interests in Eha.

Plaintiffs present the better argument as to whether Plaintiffs have, as a matter of law, constructive knowledge of information that is a part of the public record. Plaintiffs argue that when it is unclear whether a reasonably prudent person exercising due diligence under the facts and circumstances of the case would have investigated the public record, material questions of fact exist that cannot be decided as a matter of law. Here Plaintiffs allege, and defendants put forth no evidence indicating otherwise, that they never received notice of the alleged redemption or the 1992 merger. Despite the fact that Defendant Timothy Moore continued to be in contact with Plaintiffs after the alleged redemption and the merger, he does not even allege that he mentioned the redemption or merger to Plaintiffs. The Defendants have not provided any documentation indicating that Plaintiffs received notice of a shareholders or board of directors' meeting at which the alleged redemption or plan of merger was considered. The court in *Vail v. Vail,* 233 N.C. 109, 63 S.E.2d 202, 208 (1951) stated that "[i]n addition to the [public] record, there must be facts and circumstances sufficient to put the defrauded person on inquiry which, if pursued, would lead to the discovery of facts constituting the fraud." *See also Romero v. Sanchez,* 83 N.M. 358, 492 P.2d 140, 142 (1971) (internal citations omitted) ("[I]f the party is to be bound by the record even if reasonable diligence would not have led to its examination, he will likely be the victim of 'a rule of thumb rather than a live principle of law, [which] takes no account of the numerous forms in which fraud may appear and its varied devices and circumstances of concealment.'")

The Court finds that material questions of fact exist as to whether the facts available to Plaintiffs should have excited their suspicions and caused them to inquire as to their status as shareholders and directors of Eha. Because the Court finds that material questions of fact exist regarding the breach of the first agreement alleged by Plaintiffs, the Court DENIES Defendant's Motion for Summary Judgment as to Count 1 of the Complaint.[10]

---

10. The Court will not address at this time whether if Plaintiffs establish that they were wrongfully deprived of their ownership interest in Eha, they now are entitled to interests in the friends' other corporations through their interests in Eha and through the doctrine of corporate opportunity. *See Lussier v.* *Mau–Van Development, Inc.,* 4 Haw.App. 359, 368–69, 667 P.2d 804 (1983) (citations omitted) ("[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical

### b. *Count 2*

■ The parties agree that Plaintiffs loaned $40,000 to the friends to assist in the purchase of Whaler's Pub. However, Plaintiffs argue that the $40,000 was in exchange for repayment of the loan *and* a promise of a 10% ownership interest in Old Hoaloha *and* a promise of a 10% ownership interest in Whaler's Pub. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 7–8). The Plaintiffs further contend that the friends told them that they could not provide them with stock for their interest in Whaler's Pub, due to their lawyer's advice regarding the liquor license, but assured Plaintiffs that they were 10% owners and that the ownership interest would be formalized in due course. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 1–2,7). Defendants dispute this contention and assert that Plaintiffs agreed to loan the $40,000 in exchange for repayment at an interest rate of approximately 10%. (Defs.' Mot. for Summ. J at 8–9). Defendants allege that Plaintiffs expressly agreed that they would not receive any stock interest in Old Hoaloha because of Plaintiffs' desire to avoid any potential liability stemming from the liquor license. (Defs.' Mot. for Summ. J at 9).

In Count 2 of their Complaint, Plaintiffs allege that the friends have failed to "perform their obligations under the Second Agreement by failing . . . to deliver [Plaintiffs'] stock certificates evidencing their 10% interest in Whaler's Pub business." (Complaint at 22 ¶ 111). As in Count 1, Plaintiffs allege that "[b]y reason of the merger of Old Hoaloha and Eha into Whaler's Pub, and the subsequent change of name of Whaler's Pub into New Hoaloha, [Plaintiffs] are entitled to their equivalent share of the common stock of New Hoaloha, representing their 10% interest in the Whaler's Pub business." (Complaint at 22–23 ¶ 114). Plaintiffs allege that the breach of the agreement alleged in Count 2 of the Complaint occurred when it was repudiated in 2002 and further claim that if some earlier event such as the 1992 merger can be construed to be a breach then that was fraudulently concealed. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 14–15). Defendants argue that Plaintiffs had constructive knowledge of any alleged cause of action for shares of Whaler's Pub by the 1992 public filing of Articles of Merger with DCCA. (Defs.' Mot. for Summ. J at 18).

The Court finds that Plaintiffs had constructive knowledge of the friends' breach of the second alleged agreement no later than 1996 when Plaintiffs' $40,000 loan was repaid in full. Plaintiffs claim that they lent the friends $40,000 in exchange for repayment of the loan with interest and a 10% interest in Whaler's pub and Old Hoaloha. Thus, Plaintiffs were aware of their entitlement to shares in Whaler's Pub and Old Hoaloha at the point at which they lent the friends the $40,000.[11]

Plaintiffs allege, however, that the friends fraudulently concealed the existence of a cause of action for breach of the

---

advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself.").

11. Plaintiffs were given a promissory note, dated November 11, 1988, memorializing the loan, which is attached as Exhibit I to Defendant's Concise Statement of Facts. Plaintiff Michael Mroz' November 30, 2004 deposition indicates that the $40,000 loan was distributed in two transactions. According to Mr. Mroz an initial payment of $25,000 was wired on December 24, 1987 and the second $15,000 was wired in February or March of 1988. (P. Michael Mroz' 11/30/04 Depo. at 69–70). The Court notes that Plaintiffs' Concise Statement of Facts at ¶ 17 erroneously indicates that the loan was made in late 1997.

second agreement by representing to Plaintiffs that Plaintiffs would not be made shareholders in Old Hoaloha, because of issues relating to Whaler's Pub liquor license, until the transaction acquiring Whaler's Pub was complete. Plaintiffs further claim that the friends made repeated assurances to Plaintiffs that they would receive their shares.

However, Plaintiffs attached to their Concise Statement of facts a letter dated January 17, 1989 in which Defendant Kevin Butler indicated that Plaintiffs could "now be added as owners of Hoaloha." (Exhibit 4 of Pls.' Concise Statement of Facts). Thus, even if Plaintiffs believed the friends' alleged representations regarding the need to wait for the transactions involving Whaler's to be complete, Plaintiffs should have known of their cause of action at the point that Defendant Butler indicated that Plaintiffs could be added as shareholders. In fact, Plaintiff Michael Mroz indicated in his November 30, 2004, deposition that after Plaintiffs received the letter from Defendant Butler they never asked any of the friends about formalizing their interest by adding their names to the corporate records. (Pl. Michael Mroz's 11/30/04 Dep. at 96). Plaintiffs claim, however, that they were in frequent contact with Defendant Timothy Moore from 1987 through 1996 regarding repayment of their $40,000 loan and that throughout this correspondence Defendant Timothy Moore never indicated that a redemption or merger had taken place or that Plaintiffs no longer owned an interest in the luau business. (Pls.' Concise Statement of Facts ¶ 5). Plaintiffs admit that by 1996 the $40,000 loan they made to the friends was paid in full. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 10). The Court holds that Plaintiffs knew or should have known of their cause of action for shares of Old Hoaloha and breach of the second alleged agreement no later than 1996 when their loan had been repaid and they had received written notification, seven years prior, that they could be added as shareholders.

Finally, Plaintiffs contend that there was a fiduciary relationship between Plaintiffs and Defendants as officers, directors, and majority shareholders of the corporate entities in which Plaintiffs were minority shareholders and that because of this relationship the doctrine of constructive knowledge does not apply. (Pls.' Mem. in Opp'n to Mot. for Summ. J. at 23 & 25). However, the United States Court of Appeals for the Ninth Circuit has held that "constructive notice begins to run the statute of limitations regardless of any fiduciary relationship between the injured and the injurer." *Pincay v. Andrews*, 238 F.3d 1106, (9th Cir.2001).

The Court holds that Plaintiffs had constructive knowledge of their cause of action arising out of the second alleged agreement no later than 1996 and that the doctrine of constructive notice applies despite any fiduciary relationship that may have existed.[12] Because Count 2 of Plaintiffs' complaint is governed by Hawaii's six-year statute of limitations and the statute began running in 1996, Count 2 is barred by the statute of limitations and must be dismissed. Haw.Rev.Stat. § 657–1(1) (1986).

## II. *Statute of Limitations for Claims Sounding in Fraud*

▮ Plaintiffs' claims in Counts 3, 4,

---

**12.** The Court finds that material questions of fact exist as to whether or not since Plaintiffs should have discovered the alleged fraud related to the second agreement, if they had diligently pursued their rights under the second agreement, that they should have discovered the alleged fraud regarding their interests in Eha. The Court leaves these questions to the factfinder.

5, 6, and 7 all sound in fraud.[13] Hawaii Revised Statutes § 657–1(4) (1986) provides a six-year statute of limitations for personal actions not specifically covered elsewhere.[14] The Supreme Court of Hawaii has held that HRS § 657–1(4) establishes the statute of limitations for claims sounding in fraud. *Eastman v. McGowan,* 86 Hawai'i 21, 946 P.2d 1317, 1323 (1997); *Au v. Au,* 63 Haw. 210, 63 Haw. 263, 626 P.2d 173, 180 (1981). "Claims for fraud, whether based on state or federal law, arise when the fraud is or should have been discovered." *First Interstate Bank v. Hartley,* 681 F.Supp. 1457, 1460 (D.Haw. 1988) (citing *Compton v. Ide,* 732 F.2d 1429 (9th Cir.1984)).

The Court finds, in accordance with its analysis of Counts 1 and 2 above, that material questions of fact exist as to whether Plaintiffs' causes of action arising out of the first alleged agreement were fraudulently concealed but that Plaintiffs should have discovered their claims arising from the second alleged agreement. When viewed in the most favorable light, Plaintiffs' allegations raise material questions of fact as to whether the friends fraudulently concealed Plaintiffs' causes of action arising out of the first alleged agreement by redeeming Plaintiffs' shares without providing them with notice and without obtaining their consent or by filing merger documents which fraudulently indicated that Plaintiffs, as shareholders and directors of Eha, voted in favor of the merger that terminated Eha's corporate existence. However, Plaintiffs were always aware of their entitlement to the stock that they were promised in the second alleged agreement. While a reasonable person could be lulled into inaction by the friends' assurances of Plaintiffs status as shareholders regarding the second alleged agreement, after 1996 when Plaintiffs' $40,000 loan was repaid in full and they had received written notification that they could be added as shareholders Plaintiffs' inaction was no longer reasonable. The Court finds that those portions of Counts 3–7 relating to the second alleged agreement are barred by the applicable six-year statute of limitations. The Court accordingly GRANTS the Defendants' Motion for Summary Judgment as to those portions.

However, the Court finds that material questions of fact exist as to whether Plaintiffs' allegations are sufficient to establish that their causes of action for fraud arising out of the first alleged agreement were fraudulently concealed until 2002 when Defendants denied Plaintiffs' ownership interest in the luau business and thus fall within the six-year limitations period. Because the Court finds that material questions of fact exist as to those portions of Counts 3–7 regarding the first alleged agreement, Defendants' Motion for Summary Judgment is DENIED as to those portions.

### III. *Derivative Claims*

■ The Court first notes that Plaintiffs' derivative claims are subject to the standing requirements of Federal Rule of Civil Procedure 23.1. *Kona Enter., Inc. v. Estate of Bishop,* 179 F.3d 767, 769 (9th

---

13. Plaintiffs' Complaint Count 3 alleges Fraud, Count 4 alleges Breach of Fiduciary Duty to Plaintiffs, Count 5 alleges Unjust Enrichment, Count 6 alleges Fraudulent Concealment; Count 7 alleges Civil Conspiracy. The Court will treat Counts 3–7 together because each count sounds in fraud, each relates to the same set of factual events, and each is subject to the same analysis.

14. Hawaii Revised Statutes § 657–1(4) (1986) states, "The following actions shall be commenced within six years next after the cause of action accrued, and not after: (4) Personal actions of any nature whatsoever not specifically covered by the laws of the State."

Cir.1999) (holding that Rule 23.1 is procedural in nature and thus applicable in diversity actions).

Federal Rule of Civil Procedure 23.1 requires that in a derivative action the complaint shall be verified and shall allege that "the plaintiff was a shareholder or member at the time of the transaction of which plaintiff complains . . . ." In the case at hand, Defendants assert that Plaintiffs' derivative claims under Count 8 should be dismissed because Plaintiffs fail to provide evidence of stock ownership and fail to assert their derivative claims in a verified complaint as required by Federal Rule of Civil Procedure 23.1.

Plaintiffs assert that they were shareholders of New Hoaloha as a result of the 1992 merger of Eha and Old Hoaloha. In *Kona Enter., Inc.,* 179 F.3d at 770, the United States Court of Appeals for the Ninth Circuit indicated that there is a class of cases termed "merger cases" in which equitable standing has been granted to plaintiffs who would otherwise be unable to meet the continuous share ownership requirement. The *Kona* court explained that "[i]n these cases, equitable standing has been granted where the plaintiffs contended they had lost their stock due to the same wrongful conduct that was the subject of the derivative suit they were trying to bring." *Id.* The court further explained that courts have focused on the fact that, because a merger had occurred, the company on whose behalf the plaintiffs were suing had disappeared and thus they deemed an exception to the continuous share ownership requirement appropriate. *Id.; see also Mullen v. Sweetwater Development Corp.,* 619 F.Supp. 809, 817(D.Col.1985) (finding that despite the fact that plaintiffs never actually owned shares in corporation, they had standing to bring shareholder derivative claims conditional upon a finding at trial that but for defendant's fraud, plaintiffs would have become owners of stock). Because Plaintiffs are able to establish that they initially had a 10% ownership interest in Eha and because Plaintiffs allege that they would be shareholders of New Hoaloha but for the allegedly fraudulent acts of the friends resulting in the 1992 merger of Eha and Old Hoaloha into Whaler's Pub (including the alleged agreement to redeem Plaintiffs' shares of Eha), the Court finds that Plaintiffs' inability to provide evidence of their ownership of shares of New Hoaloha does not destroy the derivative causes of action asserted in their complaint.

Finally, Defendants assert that Plaintiffs derivative claims must be dismissed because Plaintiffs did not file a verified complaint. However, courts that have considered such a defect have typically granted the Plaintiff leave to replead the complaint and properly verify it. *See e.g., Smachlo v. Birkelo,* 576 F.Supp. 1439, 1442–43 (D.Del.1983); *Weisfeld v. Spartans Industries, Inc.,* 58 F.R.D. 570, 577–78 (S.D.N.Y. 1972) (allowing an affidavit of verification when it was apparent that the failure was a mere oversight). In the case at hand, Plaintiffs have already attached a verification of their complaint to their Concise Statement of Facts as Exhibit 16. The Court finds that Plaintiffs' verification is sufficient to satisfy the requirements of Rule 23.1 and dismissal is unwarranted. The Court further finds that material questions of fact exist as to Plaintiffs' derivative causes of action and Defendants' Motion for Summary Judgment is DENIED as to Count 8 of Plaintiffs' Complaint.

### Conclusion

For the reasons stated above, the Court DENIES Defendants' Motion for Summary Judgment as to Count 1 of the Complaint. The Court finds that Count 2 is barred by the statute of limitations and

must be dismissed. Accordingly, Defendants' Motion for Summary Judgment as to Count 2 is GRANTED. The Court finds that those portions of Counts 3–7 relating to the second alleged agreement are barred by the applicable six-year statute of limitations. The Court accordingly GRANTS the Defendants' Motion for Summary Judgment as to those portions of Plaintiffs' Complaint. The Court finds that material questions of fact exist as to those portions of Counts 3–7 regarding the first alleged agreement, and Defendants' Motion for Summary Judgment is DENIED as to those portions. Finally, the Court finds that material questions of fact exist as to Plaintiffs' derivative causes of action and Defendants' Motion for Summary Judgment is DENIED as to Count 8 of Plaintiffs' Complaint.

IT IS SO ORDERED.